## STRICKLAND et al. v. BAUGH et al.
### (No. 1293.)

(Court of Civil Appeals of Texas. Texarkana. May 7, 1914. Rehearing Denied May 28, 1914.)

1. NEW TRIAL (§ 6*)—GROUNDS.

Rev St. 1911, art 2026, provides that where a judgment has been rendered on service by publication, and defendant has not appeared in person or by attorney of his own selection, a new trial may be granted on defendant's application for good cause shown, supported by affidavit filed within two years after the rendition of the judgment. *Held,* that such article merely extended the time within which a motion for a new trial in such class of cases may be presented and acted on; the grounds which may constitute "good cause" being within the discretion of the trial judge and governed largely by the rules controlling similar motions filed during the term.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 9, 10, Dec. Dig. § 6.*]

2. LIMITATION OF ACTIONS (§ 102*) — REFORMATION OF DEED—RESULTING TRUST

Where a husband, after the death of his wife, discovered that property purchased with community funds had been conveyed by mistake to her as a part of her separate estate, and sued to reform the deed the suit was not only for reformation but to enforce a resulting trust, and hence limitations did not begin to run until an adverse claim had been asserted to the land or the trust repudiated.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 494–505, Dec. Dig. § 102.*]

3. REFORMATION OF INSTRUMENTS (§ 44*) — TRUSTS (§ 88*)—PROCEEDINGS—EVIDENCE—RESULTING TRUSTS.

A recital, in a deed to certain land conveyed by the vendor to complainant's wife, that the consideration was derived from the wife's separate funds, and the land was to be her separate property, did not preclude complainant after the wife's death, in a suit to enforce a resulting trust and reform the deed for mistake, from testifying that such recital was erroneous, and that the consideration was in fact paid from the community property of himself and wife.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 155, 156, Dec. Dig. § 44;* Trusts, Cent. Dig. §§ 130–133; Dec. Dig. § 88.*]

4. NEW TRIAL (§ 125*)—APPLICATION—STATEMENTS ON INFORMATION AND BELIEF.

Complainant having recovered judgment in a suit to reform a deed conveying certain land to his wife, since deceased, as her separate property on the ground that the conveyance to her as her separate estate was a mistake, and that the consideration for the deed had been community funds, defendants applied for a new trial, alleging that they had reason to believe, and therefore did believe, that the consideration was the separate property of the wife, which they were informed and believed she had received from the estate of her father by inheritance. *Held,* that such averment on information and belief only did not indicate with reasonable certainty that a different result would be had at another trial, and was therefore insufficient.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 254, 255, Dec. Dig. § 125.*]

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Suit by R. P. Baugh and others against Henry Strickland, Jr., and others. Judgment having been rendered for complainants, defendants appeal from an order denying their motion to set aside the judgment and for a new trial. Affirmed.

M. B. Harris, of Ft. Worth, and Burgess, Burgess, Chrestman & Brundidge, Geo. A. Titterington, and R. H. Vogel, all of Dallas, for appellants. Charles F. Clint and Chilton & Chilton, all of Dallas, for appellees.

HODGES, J. On the 17th day of August, 1911, the appellee R. P. Baugh filed in the district court of the Forty-Fourth judicial district of Texas his original petition, alleging in substance the following facts: That the plaintiff and Evaline Baugh were husband and wife prior to the death of the latter in 1908. Evaline Baugh died intestate and without leaving any children or descendants; her only heirs being the defendants, her sisters and brothers and their descendants. On the 30th day of April, 1904, R. P. Baugh purchased from W. L. Nichols a tract of 16 acres of land situated in Dallas county, not far from the city of Dallas. The consideration paid was the sum of $1,333.35 cash and a promissory note for $266.65 due on or before four years after date. The money paid in cash was the community property of the plaintiff and his wife, and the note executed was their community debt. The deed made by Nichols conveyed the land to Mrs. Baugh, and recited that the consideration was paid and to be paid from her separate funds, and the property was to be held by her as her separate estate. These recitals were untrue. No part of the consideration was from the separate funds of Evaline Baugh, and it was not intended that the land should become her separate property, but same was to be the community property of plaintiff and his wife. The recitals referred to above were inserted in the deed of conveyance without the knowledge or consent of the plaintiff or his wife, and plaintiff did not know that the deed contained such recitals till after the death of his wife. By reason of the payment of the consideration out of the community funds of the plaintiff and his wife, a resulting trust arose in favor of the community estate, and a decree so declaring was asked for.

2. It is further alleged: That the land referred to was purchased from Col. O. P. Bowser, the agent for W. L. Nichols. The terms were agreed to, and the property was to be conveyed to the plaintiff; "the whole transaction being in ordinary form a community trade." Plaintiff and his wife being without any children or their descendants, and knowing that plaintiff had relatives in other states, and not intending that his property should be affected, plaintiff suggested to Col. Bowser "that he wanted the deed fixed so that when he (plaintiff) died his wife

would get the property." That plaintiff had no experience and was unacquainted with the proper forms of conveyances, and was unacquainted with the effect of such documents and with the rules of descent in Texas; and he relied upon Col. Bowser, whom he knew to be a business man and real estate agent of experience. That, when the deed of the date aforesaid was presented to him, he accepted same without question. That it was the intention of himself and his said wife that said property should be so conveyed that the plaintiff would acquire a present community interest in the property, but that, if he died before his wife, the property should go to her, and that, if she died first, it should go to him. When the deed was delivered to plaintiff, he paid over the cash to Bowser, and plaintiff and his wife executed the note for the deferred payments. He did not examine the deed, and did not know that it contained the recital that the consideration was paid and to be paid out of the separate funds of his wife, and that the property was to belong to her separate estate.

"That, while plaintiff did not read said deed, yet if he had read it he would not have known that the language used therein defeated the intention of himself and his said wife, and so vested the title that in case of the death of his said wife the fee-simple estate in said property, or a part thereof, would go to her brothers and sisters and their descendants, to the exclusion of plaintiff."

3. He further alleges: That it was not his intention to make a gift to his wife, and he "believes and so charges that it was not the intention and understanding of his said wife that a gift of the community property was being made to her." Nichols had no interest in the way in which the title vested, and was indifferent as to the form of the conveyance; and neither he nor Bowser intended or understood that the property was being conveyed, so that, at the death of the plaintiff's wife, the title of one-half thereof would pass by descent to her relatives. That the deed, therefore, does not truly express the agreement of the parties, and there was a mutual misunderstanding of the legal effect of the language used.

4. It is also averred: That the relatives of the plaintiff's wife live in a distant state, and many of them are well provided for financially. That plaintiff's wife knew that plaintiff was old and poor and dependent, and, had she known that the deed was drawn as it was, she would have rejected and revoked it. It was not plaintiff's intention, in directing the manner of making the conveyance, that the deed should be so framed as to deprive him of a present interest in the title, but it was his intention for the conveyance to be so drawn as to preserve his community interest during his lifetime, and that same would pass to his wife in the event of his death occurring before hers.

5. That the deed was in fact drawn by D. W. Bowser, a capable attorney and son of Col. Bowser. That D. W. Bowser was told by his father that the deed was to be so drawn as to provide that, if plaintiff died before his wife, the property would be hers. That the attorney, not fully understanding that the community interest of the plaintiff was to be in this manner preserved, wrote the deed in its present form, vesting the title in plaintiff's wife as a part of her separate estate. Plaintiff had no communication with D. W. Bowser, who actually wrote the conveyance, and relied upon Col. Bowser to conduct that transaction. That, after the execution and delivery of the deed, plaintiff and his wife entered into possession of the land and occupied it as their homestead till the time of her death in 1908. That, since the death of his wife, plaintiff has continued to use and occupy the land as his home. This tract of land was all the property owned by the plaintiff and his wife at the time of its purchase and at the time of her death. That, relying upon the superior knowledge of Col. Bowser, plaintiff had never read nor examined the deed, and after the death of his wife took it for granted that the property belonged exclusively to him. He never discovered the verbiage of the deed or became aware of its legal effect till within less than a year before the filing of this suit, when his attention was called to it by an attorney who examined the abstract of title preparatory to a sale contemplated by plaintiff. After making this discovery, plaintiff applied to his wife's relatives for a release of their interest in the property, but they had failed to execute any.

After further alleging that no administration was pending on the estate of Mrs. Baugh, and that there was no necessity for any, the petition concludes by asking for judgment for the property in controversy; that plaintiff be quieted in his title; and that the cloud caused by the unfounded claim of the defendants be removed. He further asks: That the court decree that the deed from W. L. Nichols to Mrs. Evaline Baugh be corrected and reformed by striking from it the words "out of her separate and individual funds and estate," and from the habendum clause the following words: "To have and to hold all and singular the said premises unto the said Mrs. Evaline Baugh as her separate and individual estate." That the property be adjudged as belonging to the community estate of plaintiff and his said wife, and for relief general and special.

Citation was issued and published as required by law in suits against nonresidents. On January 2, 1912, the court appointed an attorney to represent the nonresidents. The attorney so appointed filed an answer in behalf of the nonresident defendants, consisting of a general demurrer, general and special denials, pleas of limitation, and stale demand. W. L. Nichols waived service of citation, entered his appearance, but filed no

answer. The appellants did not answer, and were represented only through the attorney ad litem appointed by the court.

On the 5th day of January, 1912, the case was tried and a judgment rendered in favor of the plaintiff R. P. Baugh. In this judgment the court finds the facts to be substantially as alleged in the petition: That the property was purchased for the community of plaintiff and his wife, and was paid for with community funds; that the recitals in the deed from Nichols to Mrs. Baugh making the land her separate property were inserted by mistake on the part of the draftsman; and that there was a "common and mutual mistake of all parties." It was adjudged by the court that the deed be corrected and reformed by striking therefrom the words "out of her separate and individual funds and estate," and from the habendum clause the words "to have and to hold all and singular the said premises unto the said Evaline Baugh as her separate and individual estate." It was further adjudged and decreed:

"That the land is now and has ever been the community property of the plaintiff and his deceased wife, Evaline Baugh, and the title thereto is hereby vested in R. P. Baugh, subject to the unpaid balance due on the note, and that R. P. Baugh do have and recover of the defendants (naming the appellants herein) the land described in the deed."

It is unnecessary to refer to the other provisions of the judgment.

A statement of the facts adduced upon the trial was prepared and filed with the papers, as required by statute. That statement consisted of the testimony of the plaintiff R. P. Baugh and O. P. Bowser and a copy of the deed from Nichols to Mrs. Baugh.

R. P. Baugh testified in substance: That he and his wife, Evaline, were married just before the beginning of the War. That his wife died in August, 1908. That, at the time the land involved in that suit was purchased, all the property owned by himself and wife consisted of the money paid on the purchase price. That this was their community property, and neither of them at that time had any separate estate. He bought the land through Col. O. P. Bowser, paying in cash $1,333.35, and giving a note for $266.65. He told Bowser to write the deed and to fix it so that, in case of his death, Mrs. Baugh would have the property. He did not tell him that the money being paid was her separate money, nor did he tell him to put it in her name as her separate property, but merely told him to use the money so she could get the property if he (plaintiff) died, and so that plaintiff would get it if she died. He did not at the time intend to make his wife a gift of the property, or to deprive himself of any right in it. After the deed was made, plaintiff had it recorded. The first time he discovered that the deed contained any recital that the property belonged to the separate estate of his wife was when he went to sell the land. He then had a lawyer to examine the title for the purchaser, and his attention was called to this provision of the deed. He knew that his wife's name was in the deed, but did not know of the stipulation making it her separate property. On cross-examination he stated that he left the deed to Bowser to write, and knew of the deed being on record, but did not know the meaning of the contents of the deed; did not think that he had ever read it or had it read over to him. All the money paid belonged to the community estate. He and his wife had only one child, and it died in infancy. He and his wife moved upon the property immediately after its purchase. He had brothers and sisters, but wanted the land to go to his wife upon his death rather than to them, if he died before she did. The deed was introduced, and showed the recitals described in the petition.

O. P. Bowser testified to having negotiated the trade between Nichols and Baugh, and that Baugh asked him to have the deed made to his wife. Bowser's language with reference to this fact is as follows:

"He asked me to have the deed made to his wife voluntarily, saying that if he should die, or drop off (I believe is the word he used), that he wanted her to have it. In other words, he wanted no controversy about her getting the property at his death in the event he should die before she did. That is about all that was said about the deed."

The witness further stated that, according to his recollection, his son wrote the deed. He told his son that Baugh decided that the deed should be made to his wife, and gave his son Mrs. Baugh's name. He could not recall whether he said anything to his son about wording the separate clause. He further stated that Baugh said nothing to him about the purchase money being his wife's separate property, or anything about deeding the property to her as her separate estate, but only to deed it to her in her name so that, in the event of his death, she should have it. On cross-examination he stated that he acted as the agent for both Nichols and Baugh in the transaction. Mrs. Baugh signed the notes, and he thinks acknowledged a deed of trust on the land.

Before the expiration of two years from the date of the judgment rendered in the case, Henry Strickland, Jr., and others, the appellants herein, claiming to be the sisters and brothers and their descendants of Mrs. Baugh, filed their motion asking for a new trial. The motion was verified by the affidavit of the attorney who represented the appellants in asking for a new trial, and is as follows:

"Before the undersigned authority on this day personally appeared M. B. Harris, agent and attorney for petitioners in the above styled and numbered cause, and being duly sworn on oath says that the matters and facts set out in said instrument are true, and that the matters and facts alleged to be true on information and belief he verily believes to be true as alleged. This affidavit covers only those allegations designated by Nos. 1 to 19, inclusive."

The substance of the motion will be referred to in discussing the assignments of error. The court overruled the motion, and this appeal followed.

[1] Article 2026 of the Revised Civil Statutes is as follows:

"In cases in which judgment has been rendered on service of process by publication, where the defendant has not appeared in person or by an attorney of his own selection, a new trial may be granted by the court upon the application of the defendant, for good cause shown, supported by affidavit, filed within two years after the rendition of such judgment."

It has now been definitely decided that this article merely extends the time within which a motion for a new trial in the class of cases there referred to may be presented and acted on. Miles v. Dana (Tex. Civ. App.) 36 S. W. 848; Wolfe v. Sahn, 55 Tex. Civ. App. 564, 120 S. W. 1114, and cases there cited. What constitutes "good cause" must to some extent be left to the discretion of the trial judge, and is governed largely by the rules which should control him in passing upon similar motions filed during the term at which the cause is tried. Perhaps more liberality should be exercised in such instances in order to give the defendant an opportunity to be represented in person or by an attorney of his own selection. If the judgment in such cases appears to be based upon insufficient evidence, or upon evidence which should not have been considered by the court, or if the defendant in his application presents new evidence not available on the first trial, these would constitute "good cause," and a new trial should be granted.

[2] In the first group of errors assigned it is insisted that both the pleadings and the evidence showed that the cause of action set out in plaintiff's original petition for a correction of the deed accrued more than four years before the institution of this suit, and that the court should have held that the action was barred by the statute of limitation. It may be conceded that this is correct if this suit be treated as one solely to correct a deed; but, if we look to the real purpose of the suit, it will be found that it is an action by one in possession to recover the title to land and to have judicially established the existence of a resulting trust. The pleadings are broad enough to bear this construction. In such a case, limitation does not begin to run until an adverse claim is asserted or the trust is in some manner repudiated. It is true the court found that the recitals in the deed from Nichols to Mrs. Baugh were inserted by mistake, and rendered a judgment correcting the verbiage of the deed by striking out those recitals. That feature of the judgment we regard as unimportant, inasmuch as the court also found that a resulting trust, in favor of the community consisting of Baugh and wife, had arisen by reason of the payment of the consideration from the community funds, and awarded a judgment to that effect. The correction of the deed, even if error, furnishes no substantial ground of complaint if the judgment in otherwise disposing of the title be correct. Payne v. Ross, 10 Tex. Civ. App. 419, 30 S. W. 670; Aransas Pass Arbor Co. v. First National Bank, 28 Tex. Civ. App. 372, 67 S. W. 906.

In the second group of assigned errors it is contended: (1) That the court erred in permitting R. P. Baugh to testify to facts which might authorize the reformation of the deed made to his deceased wife; (2) because there was no sufficient evidence introduced to support the judgment after excluding that which was illegally admitted; and (3) because of the facts set up in the application, which are detailed at length. The only proposition submitted under these assignments is as follows:

"Recitals in a deed that consideration was paid by a wife out of her separate estate, or that the property was intended to be her separate property, are contractual in their nature and cannot be contradicted or varied by parol."

It will be observed that this proposition does not apply to all of the errors complained of in this group.

[3] We infer from the argument that the particular objection sought to be raised in this part of the appellants' brief is the act of the court on the original trial in admitting the testimony of R. P. Baugh regarding the payment of the consideration from the community funds. It is claimed that this testimony related to a transaction with his deceased wife and should have been excluded. We do not so construe the testimony. Baugh's dealings in this transaction were with Bowser, the agent of Nichols, the vendor, and there is nothing in the record to indicate that Mrs. Baugh at any time participated in those negotiations or had any personal connection with that transaction. It is true the deed recites that the consideration was paid from her separate funds, but that does not imply that she paid it. Her husband, as the representative of the community, and having the right, under the statute, to the possession and control of her funds, could have been the agent through whom that payment was made, if it be a fact that the consideration was from her separate funds. Hence it does not necessarily follow from such a recital that Mrs. Baugh must have had some connection with the transaction. The assignment raising this question is very indefinite and points to no particular language set out in the statement of facts. It would be difficult to identify the testimony which the appellants now insist should have been excluded. The recitals in the deed from Nichols to Mrs. Baugh, in which it is stated that the consideration was from her separate funds and the land was to be her separate property, did not preclude Baugh from showing that the money from which the consideration was paid was the community property of himself and wife.

Appellants rely upon Kahn v. Kahn, 94 Tex. 118, 58 S. W. 825. In that case the facts showed that the deed under consideration was executed by the husband, conveying certain property to his wife, and contained recitals showing that the property conveyed was to belong to her separate estate. The husband afterwards sought to annul the deed and recover the property upon evidence showing that there was in fact no consideration for the conveyance, and that he did not execute the deed with the intention of vesting the title in her. The court held that in such a case the recitals as to the consideration were contractual and could not be disputed; there being no evidence of any accident, mistake, or fraud entering into the transaction. That case, however, was one in which the grantor was seeking to impeach the validity of his own deed. Here the case is different. Baugh was not a party to this deed, and he is not estopped by the language used. McCutchen v. Purinton, 84 Tex. 603, 19 S. W. 710; Dunham v. Chatham, 21 Tex. 245, 73 Am. Dec. 228; Fairhurst v. Lewis, 23 Ark. 435.

[4] The next question to be considered is: Does the motion show upon its face any other ground which may be considered good cause for a new trial? The application contains the following averments as to what appellants expect to prove upon another trial:

"Petitioners would further show that they have reason to believe, and therefore do believe and aver, that said property was in truth and in fact purchased with the separate funds of Mrs. Evaline Baugh; that the said R. P. Baugh, being aware of said fact at the time of the execution of said deed by said W. L. Nichols, understood that said property was the separate property of said wife, and he made no complaint, change, or effort to change said deed or reform the same while his said wife was alive. Petitioners would further show that the money which was paid for said land, so they are informed and believe and therefore aver, was given to her by her father, Henry Strickland, Sr., now deceased, and that she received the same from his said estate as a part of her inheritance from her said father. Petitioners would further show that, if they had had an opportunity to be heard in said case at the time of the trial and before the rendition of said judgment, they could have made proof of the facts hereinbefore alleged."

It will be observed that these allegations do not positively aver that the funds with which the land in controversy was purchased belonged to the separate estate of Mrs. Baugh, but that appellants "are informed and believe" that such was the fact. The affidavit which was made by their attorney is couched in language equally as guarded with reference to that question. If it is a fact that the property was paid for with the separate funds of Mrs. Baugh, that fact should have been positively averred; and, if appellants were in a position to make that proof upon another trial, this also should have been stated with certainty. Unless a dif-

ferent result would likely follow another trial, there is no good reason for disturbing the former judgment. Sharp v. Schmidt, 62 Tex. 265; Schleicher v. Markward, 61 Tex. 103; Kitchen v. Crawford, 13 Tex. 516; Foster v. Martin, 20 Tex. 118.

We are of the opinion that the trial judge did not abuse his discretion in refusing to grant the new trial; and the judgment is accordingly affirmed.