MARKUM v. MARKUM. (No. 1495.)

(Court of Civil Appeals of Texas. Amarillo.
March 12, 1919. On Motion for Rehearing, April 9, 1919.)

1. HUSBAND AND WIFE ☞119(3)—HUSBAND'S CONVEYANCE TO WIFE — COMMUNITY PROPERTY.

Though husband did not know full legal effect of a deed conveying a lot to his wife as her separate property, but where it was partly intended by him to hide his interest in property from creditors, its different effect, though not contemplated, was not a mistake of fact of either party or the attorney preparing the conveyance.

2. EQUITY ☞7—MISTAKE OF LAW—RELIEF.

A mistake of law is no ground for relief, as ignorance is not mistake, and equity will not grant relief upon the mere supposition that the party was ignorant of the legal effect of his act or of his omission to act.

3. CONTRACTS ☞93(1)—"MISTAKE OF FACT."

A mistake of fact is an unconscious ignorance or forgetfulness of the existence or nonexistence of a fact, past or present, material to the contract.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Mistake of Fact.]

4. HUSBAND AND WIFE ☞119(3) — HUSBAND'S DEED TO WIFE — WIFE'S SEPARATE PROPERTY OR TRUST.

Before a trust, either implied or expressed, can be impressed upon a clause in a conveyance of a lot caused to be executed by a husband to his wife making it her separate property, it must first be shown that such provision was inserted either through fraud, accident, or mistake.

5. HUSBAND AND WIFE ☞119(3)—DEED TO WIFE — SEPARATE PROPERTY OR TRUST — ESTOPPEL.

Where a husband, with knowledge of the terms of a conveyance, caused it to be executed to his wife, making the lot conveyed her separate property, and it was delivered to her with his consent and his knowledge that title to lot was in her, and where there was no understanding between them as to any trust, he was estopped to ingraft an unimplied trust on the deed or title.

6. HUSBAND AND WIFE ☞235(4)—DEED TO WIFE—SEPARATE PROPERTY—MISTAKE.

Where jury did not find any mistake in drafting a conveyance of a lot to a wife as her separate property, and found that husband did not intend to make it her separate property, and did not know that deed as drawn would have that effect, but that it was delivered with his knowledge that title to lot was in her name, and that he intended to put title in her to protect it from his creditors, there was no finding that separate property clause was inserted by mistake.

On Motion for Rehearing.

7. HUSBAND AND WIFE ☞119(3)—DEED TO WIFE—SEPARATE PROPERTY.

If a husband causes a deed for property paid for with community funds to be made to the wife for her separate use and causes the deed to so recite, it will vest the title in wife as her separate estate.

8. HUSBAND AND WIFE ☞235(4)—CONTRADICTORY FINDINGS—JUDGMENT.

Where husband claimed that a lot conveyed to his wife as .her separate property was community property, the jury's findings that he did not intend to make it her separate property, and did not know that deed had that effect, but intended to put title in her to protect it from claims of his creditors, were contradictory, and would not support a judgment for husband.

9. FRAUDULENT CONVEYANCES ☞172(2) — HUSBAND AND WIFE—ESTOPPEL.

Where a husband had creditors when he caused a conveyance of a lot to be made to his wife as her separate property, in order to hide his property, it was fraudulent, and he could not be heard to say that he did not intend to put title in her.

10. HOMESTEAD ☞31, 32 — INTENTION — OCCUPANCY.

It takes more than a mere intention to constitute a homestead, and while actual occupancy of the land is not, under all circumstances, indispensable, there must be something more than mere intention where there has been no actual occupancy as a homestead, such as an existing bona fide intention to dedicate it as a homestead, evidenced by some unmistakable acts showing an intention to carry out such design.

11. TRUSTS ☞361—ACTION—SETTING ASIDE DEED.

If land conveyed to a wife by a deed reciting it to be her separate property was held in trust for husband, a suit could be maintained by him, it not being necessary to set aside or correct deed before suing for the interest claimed.

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Suit for divorce by Mrs. I. L. Markum against J. F. Markum, with cross-action by defendant seeking an undivided one-half interest in land. From a decree for defendant in his cross-action, plaintiff appeals. Affirmed in part, and reversed and remanded for a new trial.

Muse & Muse and Scott, Fagan & Cardwell, all of Dallas, for appellant.

Brooks, Worsham & Graham, of Dallas, for appellee.

HUFF, C. J. This appeal challenges the correctness of the judgment of the trial court in giving appellee, J. F. Markum, an undivided half interest in and to a certain lot situated in the city of Dallas. The ap-

pellant, Mrs. Markum, brought a suit against appellee, her husband, for divorce. He filed a cross-action, asking for judgment for an undivided one-half interest in and to a lot which had been acquired during coverture. As there is no issue presented on this appeal as to the proper disposition of the case in granting a divorce and awarding the custody of the minor child, and the disposition of the other property, it will be unnecessary to state the pleadings other than on the issue as to whether the lot in question was the separate property of the wife or the community property of the husband and wife. Mrs. Markum alleged that a lot 25 feet by 149 feet, out of block 631, according to Murphy & Bolanz map of the city of Dallas, was her separate property. In answer to that part of her petition the appellee pleaded substantially that the lot in question was the community property, purchased with community funds; that while the deed recited that it was paid out of the separate funds of the wife, and was made for her sole and separate use, that such recitation was not true, but that it was paid for out of the community funds; that it was acquired for a residential and business homestead for appellee and his family and was immediately so occupied; that prior thereto appellant met with business reverses, and had sacrificed his estate in paying his debts, and that both appellant and appellee were desirous of securing a homestead which would not be subject to the payment of fictitious claims and stale demands; that he owed no valid and subsisting debts, and did not thereafter contract any debts on the faith of such property; that appellee possessed no knowledge of conveyancing and had no experience therein, and was ignorant as to the effect of recitals in deeds, and that in the purchase of the property he relied upon his attorney, in whose ability and integrity he had implicit confidence, preparing the deed in proper form, and that it was prepared by the attorney without direction from appellee, save and except as to the wish and desire of appellant and appellee, as above mentioned; that at said time it was understood and agreed by and between the parties, appellant and appellee, that the property should constitute their community estate, and that appellant should hold the same in trust for such community; that appellant well knew that in accepting the deed, with the recitals, that appellee did not make, or intend to make, her a gift of the property, and that he did not admit, or intend to admit, the payment therefor had been made, or would be made, out of her separate means and estate; that appellee accepted the deed and caused the same to be placed of record in reliance upon said attorney, and in ignorance of the legal effect of the recital therein, and in the belief that it was so drawn to preserve the community

interest therein; in such belief he paid, and caused to be paid, the consideration out of his personal earnings while he and his wife were living together, by reason of which she holds the legal title in trust for the community; that, if the deed should be construed as to make it the separate property of appellant, then he alleges the recitals were the result of a mistake of the attorney and the mutual mistake of appellant and appellee, and should be reformed to carry out the purpose and intent thereof; that, if he was mistaken in the allegations as to an express trust for the community, by reason of the facts above set out appellant is bound and obligated in law to hold the property in trust for the use and benefit of the community estate.

The appellant urged several special exceptions to this plea, which in some measure will be noticed later in the opinion. The case was submitted to a jury on special issues.

The record of the evidence in this case presents the deed by an abstract, which shows that the deed was dated February 20, 1899, the grantor thereof being Mrs. Alice Aarons, joined by her husband, Arnold Aarons, to Mrs. I. L. Markum, for her separate use and benefit; that the deed is a general warranty, and was filed for record March 9, 1899, the recited consideration being $250 cash, and eight notes, for $100 each, due 1, 5, 12, 18, 24, 30, 36, 42, and 48 months from date, with 8 per cent. interest, payable semiannually, as the notes accrued. The notes were secured by deed of trust on the lot executed by I. L. Markum and her husband, J. F. Markum, to J. P. Murphy, trustee, and bear date the same date and recorded at the same time as the deed. The deed of trust shows to have been released November 16, 1900, by Aarons and Murphy to Mrs. I. L. Markum. Both parties treat the deed as reciting that the consideration was paid out of the estate of Mrs. Markum, and that it was conveyed to her for her sole use and benefit. The findings of the jury are to the effect that Mrs. Markum had $150 at the time of her marriage to appellee, but that none of said sum went into the property in question; that the $250 cash paid was paid out of the community, and that the deferred purchase-money notes were also paid out of the community. At the request of appellant the court submitted the following issues, which are given, with the jurors' answers thereto:

"Issue No. 22. The proof shows that J. P. Murphy wrote the deed from Aarons and wife to Mrs. I. L. Markum, conveying the said Harwood street property described in the petition, which original deed is in evidence. Was the said deed, so written by J. P. Murphy, written by him at the instance and in accordance with the direction of Charles Bolanz?" Ans.: "Yes."

"Issue No. 23: Did J. F. Markum authorize

Chas. Bolanz to have the deed from Aarons and wife to Mrs. I. L. Markum executed in accordance with the terms of said deed, as written?" Ans.: "No."

"Issue No. 24: Was the deed from Aarons and wife to Mrs. I. L. Markum in evidence delivered with the knowledge and consent of the defendant, J. F. Markum, that the title to the said property was in the name of his wife, Mrs. I. L. Markum?" Ans.: "Yes."

"Issue No. 25: Was it the intention of the defendant, J. F. Markum, to put the title to the property on Harwood street, described in plaintiff's petition, in the name of his wife, Mrs. I. L. Markum, in order to protect said property from the claim of his existing creditors, or of the claims of his future creditors?" Ans.: "Yes."

At the request of appellee the court submitted the following issues and obtained answers thereto by the jury as here set out:

"Special Issue No. 11: Was it the understanding and intention of the defendant, J. F. Markum, at the time said purchase was made and said deed was drawn, that said lot, when paid for, should constitute the separate property of the plaintiff, and that he would have no interest therein?" Ans.: "No."

"Special Issue No. 18: Did the defendant, J. F. Markum, rely on his attorney to prepare the deed to the Harwood street property in proper form?" Ans.: "Yes."

"Special Issue No. 19: Did the defendant, J. F. Markum, know at the time said deed was drawn, and at the time the deferred payments were made, that the deed was so drawn as to make the lot the separate property of the plaintiff and to deprive him of all interest therein?" Ans.: "No."

"Special Issue No. 20: Was the Harwood street property purchased by the defendant with the intention of using and occupying it as a business and residential homestead?" Ans.: "Yes."

"Special Issue No. 21: Was the Harwood street property actually used and occupied by the defendant and his family as a business and residential homestead?" Ans.: "Yes."

"Special Issue No. 22: Did the defendant contract any debts on the faith of his ownership of the Harwood street property?" Ans.: "No."

In answer to a special issue, in which community property was defined, the jury answered generally that all the property described in the plaintiff's petition, which consisted of other realty and personal property, was community property and paid for out of the community funds. As the jury appears to have rejected Mrs. Markum's evidence in toto as well as that of Mr. Bolanz, and accepted Mr. Markum's statement, we will state as near as we may his testimony with reference to this property. He purchased the property from Aarons about the date of the deed, through Murphy & Bolanz, agents, and paid for the same out of the community funds, or, if the wife paid any of the money, she got it from that source. It was not his purpose to make her a gift of the funds of the property. He did not know who drew up the deed, and there was no discussion between him and the agents as to how the deed should be drawn.

"There was no understanding who should claim the property. I didn't know the deed was drawn in the way it was, containing the recitals that were set out of separate property of Mrs. Markum, and the conveyance was made for her sole and separate use. I found that out in 1911 or 1912, when I went out of business. I didn't have enough money to settle my bills. I had turned over my business on account of illness, and I didn't have the money to pay all of my bills."

He testified he did not know the legal effect of the recitals in the deed, and if he had known he would not have signed the deed; that Judge Camp, for him, examined the title, and that he only had a conversation with him over the phone with reference to the preparation of the deed. Camp asked him how he wanted the deed made, and—

"I says, 'Judge, I don't care how you make it; that will be our home;' and he said, 'You had better make it to Mrs. Markum;' and I says, 'That is immaterial to me.' I didn't know of the recitals in that deed, and I found out about that after they filed the suit."

He stated after his marriage he failed in business in 1893, and again started business in 1896. He again asserted he didn't see the deed when he signed the deed of trust and never wrote it; "Judge Kemp (Camp) examined that." That he didn't have any talk with Bolanz before the deed was sent to Aarons for execution.

"After the deed was recorded, on March 9, 1899, it was probably two months before my wife and I moved into the Harwood street property in controversy. * * * During that time we were occupying another place as our business homestead and residence homestead, and I bought that Harwood street property for a like purpose. * * * I don't think at that time that it was my intention to buy a residence homestead. I didn't know that I would be able to pay for that one or not."

The effect of his evidence is that Judge Camp examined the abstract for him before either the deed or the deed of trust were executed. That when Camp asked him how he wanted it written he left the matter entirely in Camp's hands, and when Camp suggested that it be placed in his wife's name he assented. He thought Camp wrote the deed until the trial disclosed differently, and testified:

"I do not know whether the deed being in the form it is in now would have been in the same 'separate property of the wife' if Camp had written it. I didn't direct Mr. Camp to put it in any form; I told him just to put it in the name of my wife if he thought it was best. If I had known how to have written it I would have done it myself to save trouble. I knew all along that the deed was in my wife's name."

Appellant offered a paragraph of an abandoned pleading, which in effect alleged that it was not intended by him to make a gift of this property to his wife.

"But that said recitals were made in said deed for the purpose of preventing oppressive and unremitting creditors of both plaintiff and defendant from subjecting said property to the payment of their unjust and exorbitant debts."

On further examination the appellee admitted that he failed in 1893; that his books showed an indebtedness of about $5,000, and his stock of goods amounted not to exceed $1,800; that Armstrong & Co. at that time had obtained a judgment against him for about $700, which was unpaid when the property in question was purchased, and when the deed was made to the wife, but that the judgment had not been kept alive by issuing thereon execution. This question was then asked him:

"But you still had the same idea when this pleading was filed (the amendment of the original answer upon the trial), to protect that property against anything that might come up in the past or anything that might come up in the future? A. Anything in the future; I didn't know of anything that might come up in the past. Q. And it was for that reason that you designed and intended that it should be put in the name of your wife? A. Yes, sir."

It appears that some time in 1910 or 1911 he was again in the grocery business, and on account of ill health failed; that at that time he was indebted to Atkins-Polk Company $200 or $300, which he did not pay. Upon investigation Mr. Atkins found that the property in question was in the name of appellee's wife. The appellee, Markum, when he called upon him about the debt; told Atkins the property was his wife's, and he could not pay the debt, but that he would work it out. The company charged off the debt and didn't collect it. This evidence does not appear to be denied. It also appears at that time that appellee and his wife were occupying other property as a homestead. A Mr. Usury testified that about 10 years before the trial he called upon Mrs. Markum to know if she would sell it, and she referred him to her husband, stating they were both interested in the property. Mrs. Markum testified she told Bolanz when the deed was made that she wanted the deed in good shape, and that it would be hers; that her husband did not hear what she said to Bolanz, but that when he came in Bolanz told him, and asked him if it was satisfactory, and appellee said it was. Bolanz had no definite recollection about the conversation, or as to the statements or directions with reference to the deed, but does testify that he consulted both together about the trade. Mr. Murphy, of the firm of Murphy & Bolanz, wrote the deed, and it is in his writing. He testified that he drew the deed according to the instructions received from Bolanz. The trial court, with reference to this property, rendered judgment upon the findings of the jury for appellee for an undivided half interest in the lot in question.

The first seven assignments of appellant are based upon the exceptions presented to the appellee's answer, which were overruled by the trial court, which, in effect, excepts to the answer because no facts are alleged setting out mistake by appellee's lawyer, or either party to the deed, or this suit, or in what the mistake consisted; that there are no facts upon which a trust could be based, either by agreement or in law; that there was no fraud or mistake alleged touching the preparation of the deed by the attorney, or by the appellee, or by the vendors, or between appellant and appellee, and no facts constituting such mistake alleged.

[1-3] Our courts are quite liberal in ingrafting trusts on deeds to land held in the name of either the husband or wife, in favor of either spouse, or the community. The allegations of appellee in his answer may be sufficient as to an express trust; that is, an agreement to hold the title in the name of the wife in trust and for the benefit of the community. However, the averments are somewhat contradictory in that respect. It is alleged that there were stale demands and fictitious debts outstanding against the community, and to save the property from these debts a lawyer, in whom appellee had confidence, was procured and the deed prepared by him without direction from appellee, "save and except as to the wish and desire of plaintiff and defendant as above mentioned." Then it is alleged that, if the deed had the effect to make the lot the separate property of the appellant, the recitals were the result of a mistake of said attorney. If the attorney understood the law, as appears he did from the statement in the pleadings, as to appellee's financial condition, and his desire to cover up his property from fictitious debts and stale demands, he drew the deed to effect "the wish and desire" of appellee and according to his instructions. There is no mistake shown on the attorney's part if the appellee gave him direction to so draw the deed as to effect such "wish and desire."

It may be the appellee did not know the full legal effect of the deed he caused to be drawn, and that it accomplished more than he intended it should; but it does appear that it was intended by him, as one of its effects, to hide his interest in the property, and now that it had another effect, then not contemplated, cannot be said to be a mistake of fact of either party or the attorney, but it may have been ignorance of the law on the part of somebody. Mr. Justice Washington said:

"If the mistake be nothing more than a misconception of the law, * * * I can only say that such a mistake is not a ground of relief, for ignorance is not mistake; and equity will not grant relief upon the mere supposition that the party was ignorant of the legal effect of his acts, or of his omission to act." Sims v. Lyle, Fed. Cas. No. 12,892.

Our Supreme Court, in discussing mistake, has said:

"The most philosophical definition we have found is that presented by Pomeroy: * * * 'An unconscious ignorance or forgetfulness of the existence of nonexistence of a fact, past or present, material to the contract.' This definition contains several elements, each of which, as above suggested, must be explained and qualified in its practical application. Thus, the ignorance must be unconscious; that is, not a mental state of conscious want of knowledge whether a fact which may or may not exist does so. Kerr, Fraud & M. 422. This idea is involved in, and furnishes a reason for, the exception pointed out by Dixon, C. J., in Heard v. Hall, 12 Wis. 112, 127, on authority of Kelly v. Salari, 9 Mees. & W. 54, viz. where a party enters into a contract ignorant of a fact, but meaning to waive all inquiry into it, or waives an investigation after his attention has been called to it, he is not in mistake, in a legal sense. These limitations are predicated upon common experience that, if people contract under such circumstances, they usually intend to abide *. * * either way of the known uncertainty, and have insisted on and received consideration for taking that chance." Ry. Co. v. McCarty, 94 Tex. 298, 60 S. W. 429, 53 L. R. A. 507, 86 Am. St. Rep. 854; Lott v. Kaiser, 61 Tex. 665.

The appellee cites section 845, vol. 2, Pomeroy's Equity Jurisprudence:

"The first which I shall mention is clearly connected with the doctrine stated in the last paragraph but one. It was there shown that, if an agreement is what it was intended to be, equity would not interfere with it because the parties had mistaken its legal import and effect. If, on the other hand, after making an agreement in the process of reducing it to written form, the instrument, by means of a mistake of law, fails to express the contract which the parties actually entered into, equity will interfere with the appropriate relief."

Section 843, Id., referred to in the above section, in part reads:

"If an agreement or written instrument, or other transaction, expresses the thought and intention which the parties had at the time and in the act of concluding it, no relief, affirmative or defensive, will be granted with respect to it upon the assumption that their thought and intention would have been different if they had not been mistaken as to the legal meaning and effect of the terms and provisions by which such intention is embodied or expressed, even though it should be incontestably proved that their intention would have been different if they had been correctly informed as to the law."

There are no facts alleged which show a mistake of fact. The title, according to the allegation, was to be in the name of the wife for the purpose of preserving the property from appellee's creditors. The appellee did not rely upon his inadequate knowledge of the law, but called in one learned in the law, and in whom he had confidence, to draw the deed. There is no allegation showing that he suggested any form for the deed, and gave no instructions except as to have it drawn to accomplish the "wish and desire" to save the property from the creditors. The lawyer is not shown to have been ignorant as to any fact or that he was under a misapprehension as to any fact. As a lawyer he must have known to have caused the Aarons to deed the land to Mrs. Markum would have left it exposed to the stale demand and fictitious debts against appellee, and that the only effective deed which could be drawn was one placing, not only the title in the name of the wife, but making the property her separate property, and for her separate use and benefit. In employing a lawyer appellant made the acts of the lawyer his acts and the knowledge of the lawyer his knowledge. The answer, in our judgment, alleges no such mistake as will authorize a cancellation of that provision of the deed put in there for the purpose of protecting the property from the creditors. As above suggested, this may not have prevented the establishment by evidence of an express trust upon agreement between the husband and wife. This would seem to be the holding of Du Perier v. Du Perier, 59 Tex. Civ. App. 224, 126 S. W. 10. However, in that case the deed to the wife did not purport to place the title in her for her separate use. It may well be doubted whether the express terms of a deed giving the terms upon which the title is held can be contradicted by proving a parol trust without alleging and proving fraud, accident, or mistake.

[4] In Kahn v. Kahn, 94 Tex. 114, 58 S. W. 825, our Supreme Court, in discussing a clause in a deed from the husband to the wife, the terms of which are similar to the one in the instant case, said:

"The statement in the deed from Kahn to his wife is more than a mere statement of a fact. Under the decisions referred to, its legal effect is to show the character of the right to be created by his deed, and is as much a contractual recital as any in the instrument, and belongs to that class of particular and contractual recitals which in deeds estop the parties from denying them."

Again, it is said in that case:

"Nor was the evidence admissible under the rules which allow the ingrafting of parol trusts upon legal titles. No trust of the kind known as implied trust could arise from the facts stated. * * * It cannot be admitted that it remained so after Kahn conveyed it to his wife.

for the plain reason that his deed converted it into separate property of the wife. The testimony * * * does not tend to show any express trust in the wife. Its only tendency is to show the absence of an intention plainly expressed in the deed."

That case would seem to hold before a trust, either implied or expressed, could be shown, the clause making the property the separate property of the wife must first be shown to have been inserted either through fraud, accident, or mistake. We do not believe any valid reason can be asserted why the rule announced in the above case should not apply to this. The fact that appellee did not execute the deed to his wife under the pleadings ought not to affect the rule. He alleges he caused the deed to be made to his wife to subserve his own ends and purposes, and recorded it for that purpose. Not only his intent, but also his acts, concur to estop him. We believe the court should have sustained the exceptions as to the allegations of mistake as pleaded in this case. This would have left practically only the issue of an express trust set up by the answer.

The remaining assignments are based on refusals to give instructions for a verdict for appellant, and to exceptions to the special issues submitted at the request of appellee, and the refusal to enter judgment upon the findings of the jury on issues requested by appellants. Nos. 24 and 25, heretofore set out.

[5] The facts in this case, we think, present the issue of estoppel. While the deed was not executed by appellee, the facts raised the question of knowledge on his part as to its terms at the time it was executed, and again in 1911 and 1912, and the jury found that it was delivered to his wife with his knowledge and consent, knowing that the title to the lot was in her. Perhaps on the facts, aside from the deed, the court ought not to charge as a matter of law that appellee was estopped; but in this case we find no evidence of an express trust, but, on the contrary, the appellee testified there was no understanding between him and his wife. In such an event he could not ingraft an implied trust on the deed or title, and, no express trust having been proven, the deed should have been given proper legal effect. Kahn v. Kahn, supra.

[6] The jury did not find that there was a mistake in drafting the deed. The effect of their finding is it was the understanding and intention of appellee not to constitute the property the separate estate of the wife; that he did not know when the deed was drawn that it would make it her separate property without any interest left in him. They did find, however, it was delivered with his knowledge and consent that the title to the lot was in the name of his wife. We do not believe this presents a finding that the clause was inserted by mistake of any one. In looking to the evidence, we think it is shown it was inserted purposely and to accomplish the legal purport of the deed; that, if he himself did not examine the deed, he employed an attorney to attend to it for him. The jury also found it was his intention to put the title in his wife in order to protect the property from the claims of existing creditors, or the claims of future creditors, and the evidence shows without dispute that in 1911 or 1912 he did use this deed to prevent the property being levied on by his creditors. We do not think under the pleadings, the evidence, and the findings of the jury the judgment should have been entered for appellee for an undivided one-half interest in this lot. We believe the cases cited by appellee as to the effect of a recital in deeds of this character sustain appellant's contention in this case. McCutchen v. Purinton, 84 Tex. 603, 19 S. W. 710; National Bank v. Hall, 30 S. W. 74; Hatchett v. Conner, 30 Tex. 112; Story v. Marshall, 24 Tex. 307, 76 Am. Dec. 106; Owen v. Tankersley, 12 Tex. 411; Smith v. Boquet, 27 Tex. 507; Hodges v. Taylor, 57 Tex. 198; Hoeser v. Kraeka, 29 Tex. 450; Lott v. Kaiser, 61 Tex. 665; Hunter v. Hunter, 45 S. W. 821; Kahn v. Kahn, 94 Tex. 114, 58 S. W. 825; Shook v. Shook, 125 S. W. 638; Davis v. Davis, 44 Tex. Civ. App. 238, 98 S. W. 198.

We have decided not to discuss the testimony with reference to the purpose of placing the title in the name of the wife to defraud the creditors, further than to state that it does not appear conclusively that at the time the property was purchased that it was then or would be exempt from execution. This will be apparent from reading the statement set out by us in the beginning of the opinion. The rules of law governing such question need no discussion from us.

We believe the judgment, giving appellee an undivided one-half interest in the lot in question, should be reversed and remanded for a new trial, but in all other respects the judgment will be affirmed.

Reversed and remanded in part and affirmed in part.

### On Motion for Rehearing.

On the original hearing we held, under the allegations made by appellee, he caused the deed to be executed to his wife for the purpose of protecting it from the fictitious and stale demands of his creditors; that in making the deed for the separate use of his wife he had the title placed in her, and the deed, having expressed the trust upon which the estate was held by her, could not be contradicted by proving a resulting or implied trust for the use and benefit of the community in the absence of fraud or mistake; that the answer or cross-petition of appellee alleged no facts constituting mistake, but

the allegation negatived a mistake in fact, in that the allegations showed the deed effected the very purpose designed by appellee, and that he made no specific direction as to the form or terms of the deed further than to state the purpose desired to his attorney; that, having caused the deed so to be made, he should be bound by its terms as much so as if he himself had executed the deed direct fo his wife.

[7] "If he causes a deed for property, paid for with community funds, to be made to the wife for her separate use, and causes the deed to so recite, it will vest the title in the wife as her separate estate." McCutchen v. Purinton, 84 Tex. 603, 19 S. W. 710. It is true that case does say that testimony to show the recitals in the deed were not paid out of the separate funds in a proper case would be admissible. One instance in which it would have been proper to admit such evidence would be when the creditor attacked the deed as being in fraud of creditors; another might be when it was shown that the clause was inserted through fraud or mistake. Kahn v. Kahn, 94 Tex. 114, 58 S. W. 825; Lott v. Kaiser, 61 Tex. 665. The appellee insists that the court, in the case of Strickland v. Baugh, 169 S. W. 181, reached a different conclusion to the one announced by us. The facts alleged in that case and this we regard as materially different. In that case it was the purpose and direction of the husband, in having the deed executed to be so drawn as to vest title in his wife after his death; but, instead of so drawing the deed, it was made to vest a present title in the wife as her separate estate, and also it was shown the wife did not know of that deed. The deed there to be drawn was to be testamentary in character, but instead it was drawn so as to vest title in præsenti. This the court evidently found was a mistake in the draftsman and was not drawn according to direction. In this case the deed, according to the allegation, was drawn so as to effect the purpose of appellee without any direction as to its form or terms. This case falls nearer under the rule announced by the Supreme Court in the case of Lott v. Kaiser, supra. We did not decide the case on estoppel arising upon a purpose to defraud creditors, but on the ground that the deed itself expressed the trust upon which the title was held, and was so executed by the procurement of the husband. We were of the opinion that the pleadings as to mistake were not sufficient on their face. The assignments presenting error in failing to instruct a verdict or to render judgment upon the motion of appellee were not sustained; that is, to the extent of holding that the court should have rendered judgment for the appellee upon the verdict.

[8, 9] We doubt very seriously whether the findings of the jury authorized a judgment for any one, as we regard them as being in their nature contradictory. That is, they find it was not the intention of appellee to constitute the property the separate estate of the wife, and that he did not know it would be her separate property, but they also find it was his intention to put the title to the property in the wife in order to protect it from the claims of existing creditors and the claims of future creditors. If that was his intention, there could not be a mistake in so wording the deed as to make it effectual. These findings we regard as contradictory, and, in our opinion, would not support a judgment; and again, if he had creditors at that time and he sought to cover up his property, it was fraudulent, and he will not be heard to say that he did not intend to put the title in his wife. It is insisted also that the property was exempt. If it was, there was no fraud on the creditors in deeding it to his wife. While the jury found appellee bought the property with the intention of occupying it as a business and residential homestead, and that it was actually so used, they do not find when it was so used. The appellee testified that it was two months after recording the deed before he moved on the property, and during that time he and his family were living on another place as a business and residential homestead.

[10] It takes more than a mere intention to constitute a homestead; that is only a part. As we understand, actual occupancy of the land is not, under all circumstances, indispensable; but there must be something more than mere intention, where there has been no actual occupancy of the land as a homestead, to vest it with that quality. There must be an existing bona fide intention to dedicate the property as a homestead, and this must be evidenced by some unmistakable acts showing an intention to carry out the design. At the time of the conveyance and for two months thereafter appellee and his family occupied other property as a homestead. Can it be said that the mere intention at some future time to make the property so bought a homestead at the time the wife took a deed thereto in her separate right will invest it with that character? Loan Co. v. Blalock, 76 Tex. 85, 13 S. W. 12; Parrish v. Hawes, 95 Tex. 185, 66 S. W. 209. We refer to the question of homestead in the original opinion as not being conclusively shown. While the jury did find it was the intention so to use the property, and that it was subsequently so occupied, they did not find when it was occupied. The question is presented by appellee's evidence whether he had in fact abandoned his former home when he caused the deed to be executed to his wife. We were not satisfied that the findings of the jury would authorize the judgment, and hence concluded it to be our duty to reverse the case. At this

time we desire to state that we did not hold that the action was barred by the statute of limitation.

[11] It is our view, if the land was held in trust by appellee, the suit could be maintained. It was not necessary to set aside the deed or correct the deed before suing for the interest claimed. Insurance Co. v. Brannon, 99 Tex. 391, 89 S. W. 1057, 2 L. R. A. (N. S.) 548, 13 Ann. Cas. 1020; Alfalfa, etc., v. Mudgett, 199 S. W. 337. As we view this case, it should be reversed for a new trial as to the lot in question.

The motion for rehearing will be overruled.

---

⬦➝For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes