## CRANDALL et al. v. MOSS.

### No. 4865.

Court of Civil Appeals of Texas. El Paso.
July 2, 1952.

Rehearing Denied July 30, 1952.

492

Golden, Croley & Howell and Townsend & Townsend, Dallas, for appellants.

Locke, Locke & Purnell, Maurice E. Purnell and Gordon Fogg, all of Dallas, for appellee.

PRICE, Chief Justice.

This is an appeal from a judgment of one of the District Courts exercising jurisdiction in Dallas County.

H. S. Moss, hereinafter called appellee, in a trial before the court without a jury recovered a several judgment against Mrs. Claire Wofford Crandall and her husband; Mrs. Pearl H. Wofford, a widow, in her official capacity as executrix, and Mrs. Julia W. Mayfield and her husband, all hereinafter referred to as appellants, in the sum of $1770.43 each, the judgments not being separate as to husbands and wives. Involved was an alleged overpayment to defendants under an oil lease covering 160 acres of land in Nueces County.

In substance appellee alleged that on October 31, 1936, appellants executed and delivered to appellee Moss, J. B. Stoddard, Nathan Adams and Bush Wofford as lessees, an oil and gas lease on 160 acres of land in Nueces County. It is averred that Bush Wofford died and his wife, Pearl H. Wofford as such and as independent executrix succeeded to his interest. Bush Wofford was alleged to have owned an interest on the land and was both lessee and lessor.

The lease, in addition to the usual royalty of ⅛ interest contained this clause:

"4th. In addition to the foregoing reserved royalty interest, and in addition to the valuable consideration paid for this lease, the lessor reserves to themselves, one-eighth of the remaining seven-eighths of any oil produced and saved from that part of the hereby leased premises which may be proved productive, said productive areas to contain ten acres, or more in the discretion of lessee, and as nearly in squares as possible, until there has been delivered into the pipeline, free of cost, to the credit of lessor oil of the market value (meaning the market value at the time the oil runs are delivered into the pipe line to which lessee may connect it or his wells) of Five Hundred ($500.00) Dollars per acre for the acreage proven productive in tracts as aforesaid, whereupon this reservation of title to said one-eighth of seven-eighths of the entire production shall terminate, as to that particular tract, and said interest shall vest in the lessee, or their assigns."

That after the execution and delivery of said lease three producing wells were drilled on the land, one well on each of three forty-acre tracts out of the large tract, the Railroad Commissioner by order having provided for a density of wells on the 160 acres of land of forty acres. On the remaining forty-acre tract a well was drilled but same turned out to be a dry hole, and from this tract there never has since the date of the lease to the present time been any production. Subsequent to the drilling of the three producing wells in question, Bush Wofford and appellee Moss conveyed their interest to a corporation named Bayside Oil & Gas Company, of which Bush Wofford owned one-third of the stock and appellee Moss the other two-thirds. This corporation subsequently dissolved and the lease on the said 160 acres revested in appellee Moss and Bush Wofford, Moss's interest being two-thirds and Wofford's one-third. On the royalty of one-eighth of seven-eighths, as provided in clause 4 of the lease, appellants were paid $70,622.62, whereas they were only entitled to royalty in the sum of $60,000; that appellants were only entitled out of production to $500 per acre on that portion of the lease on which there was production; that there was proven production on 120 acres and that the balance of 40 acres remaining was proven to be non-productive, a dry well having been drilled thereon; that the $70,622.62 was remitted to appellants by the Republic Oil Refining

Company, which had purchased the oil, and was paid by the direction of Bayside Oil & Gas Company; that there was an overpayment of $10,622.62. It is averred payment to appellants by the Republic Oil Refining Company on account of said oil payment of the sum of $70,622.62 was unauthorized by plaintiff as to all amounts in excess of $60,000, and was unauthorized by the terms of the original reservation of said oil payment; that appellee is entitled to recover two-thirds of said oil payment.

Appellant Pearl H. Wofford answered by general denial and in substance set up that as a representative of her husband, if plaintiff was correct, that when the payment of $60,000 was made that she then became entitled to more than the amount paid to her from the oil payments, and pled that all payments were made to her out of said money of seven-eighths working interest with full knowledge of plaintiff Moss, and on the order and with the consent of plaintiff, and without plaintiff having ever indicated in anywise the productive acreage covered by said lease to be anything less than the entire 160 acres. Appellant Mrs. Mayfield and her husband answered by general denial and that payments were made with the full knowledge on the order and with the consent of appellee. Appellants Claire Wofford Crandall and husband and W. R. Wofford answered by general denial, set up that appellee Moss designated the entire 160 acres as acreage proven productive under the terms of the lease, and that all payments were voluntarily made with the knowledge and consent of appellee. By cross-action they asserted that appellee owed on the acreage the sum of $80,000 and sought to recover the unpaid balance.

The facts in this case are practically undisputed. The facts were mostly stipulated facts. It was stipulated in substance that the lease on the 160 acres was made as alleged that under the Bayside's order the sum of $70,622.62 had been paid by the Republic Oil Refining Company out of one-eighth of the seven-eighths working interest held by appellee Moss and Bush Wofford in the lease; that the order to the Republic Oil Refining Company was to pay one-eighth of seven-eighths of the oil runs until notified by appellee and Bush Wofford to cease; that up to the time the $70,622.62 had been paid no such notice had been served on the Republic Oil Refining Company.

It is our opinion that under clause 4 of the lease, which we have heretofore quoted, that of course the payment was to be made only from the proceeds of actual production, and that appellee was entitled to segregate in accordance with paragraph 4 of the lease the land on which there was actual production from the land on which there was no production; that appellants were entitled in liquidation of their rights under the oil payment to one-eighth of seven-eighths of the oil produced until the sum of $500 for 120 acres amounting to $60,000. Appellee does not in any way question this. Here involved is the forty acres upon which no producing well has been drilled and upon which there has been a well drilled which turned out to be a dry hole and which perhaps indicated that the forty acres was non-productive. In our opinion the undisputed evidence shows that appellee was only legally bound to deliver one-eighth of the seven-eighths on 120 acres of land until the sum of $60,000 had been paid therefor. This conclusion, however, in our opinion does not settle this case. Appellee's petition does not aver that at the time over-payments were directed to be made that he was not cognizant of the facts. His averment is that the Republic Oil Refining Company made the payments without authorization. This averment was not proven, in fact it was proven that the payments were made as authorized by appellee's predecessor in interest.

Appellee voluntarily caused the overpayment to be made. The question posed here is did he cause it to be made under such circumstances that he is entitled to recover the overpayment of $10,622.62? The only ground that he urges in his pleading is that the Republic Oil Refining Company made the payments without authorization. Of this allegation there was a total lack of proof, in fact, the evidence shows that the Bayside Oil & Gas Company's direction was for the payment to be made of one-

eighth of the seven-eighths interest until they had received notice to discontinue. At the time said corporation was owned two-thirds by appellee and one-third by Bush Wofford. They knew that this direction had been given and that the payments were being made in accordance therewith. Appellee was the president of said Bayside corporation and signed the diversion order as such. Sixty thousand dollars had been paid out of the royalty by some time in October 1947. On the 24th day of June, 1947, there was a letter written to Republic Oil Refining Company as follows:

"We will appreciate it if you will show on the bottom of this letter, the full amount of the oil payment, and if possible show the unpaid balance due the oil payment owners as reflected by your records as of March 31, 1947."

On July 7, 1947, the Republic Oil Refining Company replied to the letter, giving the fullest information, and informing him that said pipeline company intended to continue the payments on the basis of $500 per acre for 160 acres. This letter was delivered to the office of appellee and passed into appellee's files. Whether appellee, prior to his direction to stop payment, ever saw this letter does not appear. It does not appear that prior to the making of the payment in question he ever sought information in respect to the amount of the payments. If this letter is insufficient to charge appellee with information that it was proposed to make the payment on the basis that $500 was due for 160 acres, it is sufficient to establish as a matter of law that conscious of his want of information as to the aggregate amount of payments, he continued to authorize the making of same. In substance, as far as appellee's testimony goes on the matter, it is to the same effect that he did not know when same were made— and by payments is meant overpayments— that $60,000 had been paid.

■ In order to recover money voluntarily paid there must be a bona fide belief as to the existence of a fact which renders same legally due. Where one seeking such relief is conscious of his ignorance of facts which would render same not due this would not constitute a mistake. A mistake, in its last analysis is a mental state. It is an erroneous belief as to a fact. Mere conscious ignorance of the existence or non-existence of a fact is not a mistake.

Re-Statement, Restitution, par. 6, p. 29; Kansas City Packing Box Co. v. Spies, Tex.Civ.App., 109 S.W. 432; Houston & T. C. Ry. Co. v. McCarty, 94 Tex. 298, 302, 60 S.W. 429, 53 L.R.A. 507; Markum v. Markum, Tex.Civ.App., 210 S.W. 835; Ward-Harrison Co. v. Kone, Tex.Com. App., 1 S.W.2d 857.

"It is a general rule that money paid under a mistake of fact—that is, an unconscious ignorance or forgetfulness of a fact, may be recovered. * * * The reason for the rule is that the payee ought not to be permitted to retain that which in conscience does not belong to him as against the person to whom in conscience it does belong." 32 Tex.Jur. 735–737, par. 52.

■ In our opinion, in order for appellee to be entitled to recover these payments in excess of $60,000 it must appear that when same were caused to be made he held the belief that the sum of $60,000 had not been paid. In his testimony he does not say he had such a belief. The issue of mistake is not raised by the pleadings of appellee. We have elected to consider this case as though it were, and if on the assumption an implied finding of mistake may be attributed to the court dehors the pleading.

At the time the payments in question were made all parties to this proceeding probably held the confident belief that when drilled oil would be produced from the undrilled forty acres. If appellee held this belief as to what the future would bring forth as to production on the forty acres this was not a mistake of fact, but simply a mistake in opinion.

At the time these payments were made it was not known whether or not actual production would be obtained on the undrilled forty. If actual production had been obtained on the additional forty the overpayment on the actual producing area of 120 acres would have gone toward the discharge of the obligation to pay one-

eighth of seven-eighths of actual production from the forty acres when and if production was achieved. It is conceivable that appellee regarded it as of little importance. If payment be made on the basis of $500 per acre on the undrilled portion he may have held a strong belief that the undrilled forty would be productive. There is lacking from appellee's pleading and proof entirely a constituting element of mistake. The element wanting is an unconscious ignorance that the $60,000 in question had been paid to appellants at the time the overpayments were made. If appellee was aware of the amounts of the prior payments the evidence establishes as a matter of law that he knew of his ignorance relative thereto. In June 1947 he by letter made inquiry as to how much had been paid to appellants. In our opinion there is a total lack of evidence to support a finding of mistake on the part of appellee. Appellee knew the appellants were receiving one-eighth of seven-eighths. He was receiving a portion of the seven-eighths. He knew what his interest was, he knew how much he was receiving. He knew the location and extent of production.

Appellant Mrs. Pearl H. Wofford presents an additional reason why the judgment of the court was erroneous as to her. It will be recalled that Mrs. Wofford succeeded to the rights of her husband, Bush Wofford in and to this lease. Her husband was as to interest therein a lessor and a lessee, and one of the lessees of the other interest. Appellee had a two-thirds interest in the lease and Bush Wofford a one-third interest. As lessor Mrs. Wofford was entitled to a one-fourth interest in the one-eighth of seven-eighths until the $500 had been paid. If appellee's theory be correct that when $60,000 was paid the right to this additional one-eighth of seven-eighths royalty payments vested one-third in Mrs. Wofford and two-thirds in appellee, then in receiving the so-called overpayment same was less than her due. She received one-fourth of the overpayment. According to appellee's position she was entitled to one-third thereof. The judgment against Mrs. Wofford is without support either in law or equity.

It is ordered that the judgment of the trial court in favor of appellee and against the appellants be in all things reversed and judgment rendered on those issues in favor of appellants, that is, that appellee take nothing as against appellants.

It is further ordered that the judgment of the trial court denying appellants relief on their cross-action be in all things affirmed.

SUTTON, Justice.

I concur in the disposition of this case and particularly on the ground plaintiff had never designated any productive areas in squares of ten acres or more, or in any area less than the 160 acre lease. Plaintiff, in case of production, was given the privilege in his discretion to designate productive areas to contain ten acres or more in as nearly squares as possible and when so done he agreed to pay in oil the sum of $500 per acre for such lands thus designated. He did nothing whatsoever to designate any areas as productive areas.

The lease provides if oil be produced from the lease within the primary term of five years the lease shall continue so long as oil is produced therefrom. For this purpose and to perpetuate the lease the 160 acre lease is regarded and is constituted a productive area. Any producing well has the effect of perpetuating the lease. The 40 acres upon which a dry hole was drilled was not forfeited by the failure of the well to produce. The lease had already been perpetuated as to that 40 acres by the production had on the other portions of the lease.

We take it it is conceded the plaintiff was under the necessity of designating productive areas, because it is said each 40-acre tract constitutes such areas. It is conceded no designations had been made. Mr. Moss when asked if he had ever done anything to designate such areas, replied:

"I have not done anything except the wells were drilled on forty acre pattern, again I say the allowable was given by a forty acre pattern."

In his own mind he regarded the 40-acre tracts as productive areas without doing

anything to so indicate to the lessors. It seems to me he was under the necessity of alleging and proving he had so designated them as productive areas before he could claim an overpayment, and until such designations were made the whole 160-acre tract must be regarded as a productive area.