WEBBER *v.* DETROIT FIDELITY & SURETY CO.

1. Executors and Administrators—May Not Charge Estate by Contracts Originating With Himself.

Generally, personal representative may not charge estate by contracts originating with himself, although for benefit and in interest and on behalf of estate; such contracts binding him only in his private capacity.

2. Same—Principal and Surety.

Where administrator borrowed money from bank without authority for avowed purpose of perfecting title to land belonging to estate, and then used it for his own purposes, it was his personal obligation, not an estate obligation, and therefore estate has no ground for asserting liability thereon against surety on his bond.

3. Same—Sale of Land Without Authority.

Where administrator, without license, attempted to sell land belonging to estate, sale was void, and therefore surety on his bond is not liable for money paid on said sale and used by administrator for his own purposes.

Appeal from Ionia; Hawley (Royal A.), J. Submitted April 13, 1933. (Docket No. 132, Calendar No. 37,023.) Decided May 16, 1933.

In the matter of the estate of Richard A. Kilts, deceased, Lorenzo Webber was appointed administrator *de bonis non.* Account of Detroit Fidelity & Surety Company, surety of former administrator, was surcharged with certain items by probate court. Surety appealed to circuit court. Judgment affirmed. Surety appeals. Reversed, and remanded.

*George C. Coffey,* for appellant.

*Watt & Colwell,* for appellee.

CLARK, J.   Raymond C. Benner was appointed administrator of the estate of Richard A. Kilts, deceased.   Defendant was surety on his bond given upon appointment.   Benner died.   The defendant surety filed an account.   The probate court surcharged the account with certain items, which order, on appeal, was affirmed in circuit court.   Defendant has appealed.

The facts are well stated by the trial judge:

"It appears from the proofs that Austin Kilts, also known as Richard A. Kilts, late of the township of North Plains, in said county, died intestate on the 14th day of May, 1928.   He left him surviving three children, viz.: Ruth E. Benner, Austin E. Kilts and Avis L. Gunter, each of whom was upwards of 21 years of age.   His estate comprised both real and personal property.   The real estate consisted of 15 acres of land situated in the township of Lebanon, in Clinton county, of the estimated value of $1,000, and the personal property was of the estimated value of $1,500, as shown by the petition for the appointment of an administrator filed in the probate court of Ionia county in the matter of said estate on June 2, 1928.   Such proceedings were had in said court in pursuance of such petition that Raymond C. Benner, the husband of said Ruth E. Benner, was duly appointed as administrator of such estate on the 2d day of July, 1928, and duly qualified as such administrator by filing the required bond in the sum of $1,600 with said Detroit Fidelity & Surety Company as the surety thereon, and thereupon duly entered upon the performance of the duties of his trust.   He made an inventory and appraisal of the property which came into his hands as such administrator on July 1, 1928, and filed the same in said probate court.

"It appears after he became administrator he had an opportunity to sell the above-mentioned 15 acres

of land for the sum of $450 to Clark L. Gregory, Fred C. Gregory, and Edith B. Gregory, of said township of Lebanon. This offer was acceptable to him. However, it appears that at the time of or shortly prior to the making of such offer he learned that there was a mistake in the deed of conveyance whereby said lands were conveyed to Austin Kilts, the decedent, and that such mistake was of such a nature that such deed failed to convey to said Austin Kilts, the deceased, the lands actually intended by the parties thereby to convey to him, or any part of the same. Accordingly, it became and was necessary to institute proceedings in a court of chancery to correct such mistake and to reform such conveyance to the extent necessary in order to vest title in the lands intended to be conveyed in the estate of decedent. He also learned that the necessary cost and expense of instituting such proceedings would be the sum of $130.

"He was also advised that it would be necessary to obtain a decree reforming and correcting such conveyance before application could be made to the probate court for license to sell such real estate. He was then out of funds necessary for that purpose. Thereupon in or about the fall of 1930 he applied to the Bank of Hubbardston for a loan of $90 and later for a further loan of $70 with which to advance the necessary money to his attorney in order to institute and prosecute such suit. The loans were made and notes given therefor. Later such notes were renewed on one or more occasions. The last renewal thereof was on January 16, 1931, at which time he, as administrator of said estate, executed a promissory note to the Bank of Hubbardston for the sum of $160.50 payable 15 days from the date thereof.

"On the 9th day of September, 1930, as such administrator he entered into a land contract to and with said Fred C. Gregory, Clark L. Gregory and

Edith B. Gregory, wherein and whereby as such administrator he agreed to convey the said 15 acres of land in accordance with the correct description of said land as incorporated in said land contract, for the sum of $450, $200 of which was to be paid and was paid on the date of the delivery of the contract, and the remaining $250 within 60 days after the said first party thereto (being said administrator) shall clear the title to said premises by court proceedings or otherwise to the reasonable satisfaction of second parties (said Gregorys).

"He died in the month of April, 1931, without having instituted any proceedings to correct and reform said deed of conveyance and without having employed and paid any attorney for instituting the same, and without having obtained, or attempting to obtain, any license to sell said lands as such administrator.

"In the meantime also he had exhausted the entire amount of said personal estate, together with its accruals, the aggregate of which was the sum of $1,654.91, excepting the sum of $248.54, as shown by his final account as prepared by said Detroit Fidelity & Surety Company, as surety on said bond. He had not paid said obligation to the Bank of Hubbardston and had not conveyed the said 15 acres to said Gregorys, nor had he reimbursed them in any way for not so doing.

"In borrowing such money from the Bank of Hubbardston he represented that it was to be used to employ an attorney to pay the expense of correcting and reforming such deed of conveyance. It was lent to him upon that understanding. In fact the president of the Bank of Hubbardston, Harry J. Holbrook, with whom Benner had his negotiations for said loan, had, during the lifetime of Austin Kilts, been his adviser on business matters and said Holbrook knew of the error in the title to the land in question and that it would be necessary to perfect

the title to said land through proceedings in a court in chancery before the property could be sold. He obtained also from the Gregorys $6 in addition to the $200 above mentioned on the claim that it was to be used for the purpose of procuring an abstract of title of such land or for some similar purpose.

"At his death he left no property. Undoubtedly he was an embezzler. I am convinced that in obtaining such loan from the Bank of Hubbardston and such money from the Gregorys, he was acting under color of his office, although I am not as certain of the correctness of this conclusion as I would desire to be. He was also, so far as the Bank of Hubbardston is concerned, acting in an unexpected emergency. The money in the estate had been exhausted by the payment of expenses, advancements to heirs and to himself. The real estate could not be sold and he had no money wherewith to institute the requisite proceedings to put it into a situation to sell or even to enter into a contract of sale. He was compelled to borrow, relying upon his official position. The Bank of Hubbardston advanced him the money involved in its claim."

As pointed out by the trial judge, it is said in *Clark* v. *Fredenburg,* 43 Mich. 263, that the bond covers all moneys received under color of official authority. This rule may be correct as applied in certain cases, such as mere irregularities in procedure, defect in proceedings for appointment, or for the sale of real estate and the like. *Schlee* v. *Darrow Estate,* 65 Mich. 362. But it can hardly be carried to the length of requiring the surety to satisfy personal wrongs of the principal without the law. In *Russell* v. *Wheeler,* 129 Mich. 41, it is said:

"Her bondsmen did not sign her bond upon condition that she should do things which the law did not permit, but only those things which the law did

permit. Where the statute does not give an administrator a right to the possession of the real estate, neither he nor his bondsmen are liable for the rents or profits."

The administrator here borrowed money from the bank. This was his personal obligation, not an estate obligation. If he had used the money for the benefit of the estate, reimbursement might have been allowed. But he did not so use it. He was entitled to no reimbursement. The estate is not affected by the transaction, and has no ground for asserting liability in this matter against the surety. A leading case is *Thompson & Lively* v. *Mann*, 65 W. Va. 648 (64 S. E. 920, 22 L. R. A. [N. S.] 1094, 131 Am. St. Rep. 987), from which we quote syllabus:

"The general rule, subject to few exceptions, is that a personal representative cannot charge the estate by contracts originating with himself, although for the benefit and in the interest and on behalf of the estate; such contracts binding him only in his private capacity."

And from the opinion quoting Schouler, Executors & Administrators (2d Ed.), p. 334 (22 L. R. A. [N. S.] 1095):

"Indeed, the rule is that executors and administrators cannot, by virtue of their general powers as such, make any contract which at law will bind the estate and authorize a judgment *de bonis decedentis*. But, on contracts made by them for necessary matters relating to the estate, they are personally liable, and must see to it that they are reimbursed out of the assets."

And from note to that case (22 L. R. A. [N. S.] 1094):

"The great weight of authority supports the conclusion reached in the above decision, that a surety

on the bond of a personal representative is not liable thereon for obligations of his principal contracted on behalf of the estate of the decedent."

In *Bank of Newton County* v. *American Bonding Co.,* 141 Ga. 326 (80 S. E. 1003, 50 L. R. A. [N. S.] 1089), the following:

"An administrator is not permitted to go into the market and borrow money without authority of law, and charge the estate by a contract originating with himself. This is a wise rule. It protects the estate from the waste and mismanagement of the administrator, and does no injustice to him."

See, also, 11 R. C. L. p. 304; *Roscoe* v. *McDonald,* 91 Mich. 270. It follows the surety is not liable for the money Benner borrowed from the bank.

.The sale of land attempted by the administrator without license was void and unenforceable as against the estate. *Frost* v. *Atwood,* 73 Mich. 67 (16 Am. St. Rep. 560), quoting syllabus:

"An executor has no power to dispose of lands by virtue of his office, and whenever he undertakes to meddle with lands without authority, he cannot bind them any more than a stranger. The owner, whether devisee or otherwise, is in no way affected by his action, which is void for all purposes."

See, also, 24 C. J. p. 154, 11 R. C. L. p. 165. And being so, the following from *Schlee* v. *Darrow Estate, supra,* 377, is applicable:

"The circuit judge found as a conclusion of law that the sale from Berner (the administrator) to Kinzle was wholly illegal and invalid, and of no force and effect whatever, as against the appellants, and did not divest their title to said land. If this conclusion is correct, it is clear that the appel-

lants (the parties suing on the bond) have no claim against the estate of Darrow, the surety on the bond, for the money paid on such sale.''

Reversed, with costs, and remanded for proceedings not inconsistent herewith.

McDonald, C. J., and Potter, Sharpe, North, Fead, Wiest, and Butzel, JJ., concurred.