## HARTFORD ACCIDENT & INDEMNITY CO. v. FARRELL.

### No. 13546.

Court of Civil Appeals of Texas.
Fort Worth.

May 14, 1937.

Rehearing Denied June 25, 1937.

Richard L. Hughston and Albert B. Hall, both of Dallas, for appellant.

Slay & Simon and Richard U. Simon, all of Fort Worth, for appellee.

SPEER, Justice.

On January 12, 1931, by an order of the Ninety-Sixth district court of Tarrant county, Cullen W. Bailey was appointed receiver in a suit pending in that court, styled Edward Ertel v. Ertel Oil Properties, Inc. The order appointing the receiver required that he enter into bond in the sum of $5,000. This bond was duly filed with the Hartford Accident & Indemnity Company as surety thereon. Bailey resigned from the receivership on February 28, 1933.

R. R. Farrell instituted this suit on November 29, 1935, against Hartford Accident & Indemnity Company, hereinafter referred to as appellant, to recover $1,406.57. In stating his cause of action, he alleged the appointment and qualification of Bailey as receiver and made the order of the court a part of his petition. This order will be referred to more specifically later in this opinion.

Farrell pleaded the execution of the bond in the sum of $5,000, conditioned that the receiver should faithfully discharge his duty as such, and that he would obey the orders of the court in said proceedings. The bond was signed by Bailey as principal and by appellant as surety.

Further allegation was made that early in 1932, and after Bailey's qualification as receiver, he came to Farrell and represented to him that as receiver of said estate he was having some trouble with certain creditors and assured Farrell that the claims of these creditors could be purchased for $5,-308.28, and if he (Farrell) would purchase them at that price, he (Bailey), as receiver, would see that the money was repaid to Farrell along with the profit thereon within a reasonable time; that relying upon the fact that Bailey was such receiver, and his representations made in connection with the deal, the said sum of $5,308.28 was paid into the hands of the said receiver for the purpose of purchasing certain outstanding claims against the estate of the Ertel Oil Properties, Inc.; that Bailey, as receiver, agreed to look after the purchase of the claims.

It was further averred that Bailey did in fact purchase said claims but that he only paid $4,201.71 for them and retained $1,406.57 of Farrell's money; that said last-mentioned amount was so procured by Bailey under false pretenses, and by him converted to his own use without authority, justification, or consideration, all to the damage and detriment of Farrell to the extent of the value thereof; that all of the acts and conduct of the said Bailey, receiver, were by virtue of and purported to be in behalf of the estate in his possession and control, for which he was such receiver; that in the above item of $1,406.57 there is included the sum of $300, alleged by Farrell to have been paid out by Bailey without the former's consent.

Allegations were made that each and all of said acts of Bailey while acting as receiver aforesaid were within the scope of his power and authority as such, and that he had failed to refund unto Farrell the excess money in his hands furnished by Farrell not used in the purchase of said claims; that by reason thereof the bond had been breached, resulting in damages to Farrell as aforesaid; that appellant, as surety for Bailey, was liable and had obligated itself to pay to Farrell such sums of money as he had so lost by virtue of his said transactions with Bailey as receiver of said estate. The additional allegation was made by Farrell that Bailey died insolvent and intestate subsequent to his resignation as receiver and prior to the institution of the suit; that no administration was had on his estate; that no executor, administrator, or other representative thereof ever took possession of his estate or in any way attempted to manage or otherwise control it; that said estate was wholly insolvent.

Prayer was for final judgment against appellant for the sum of $1,700.

On April 13, 1936, H. T. Dean, as receiver for the Ertel Oil Properties, Inc., intervened in the suit, alleging that he was, at the time of the intervention, receiver for said estate, and that Farrell's suit against appellant was "based upon an alleged breach of trust and breach of duty on the part of Cullen W. Bailey, now deceased, who was the former receiver of the Ertel Oil Properties, Inc. * * * This intervener has an interest in any recovery which may be obtained from the Hartford Accident & Indemnity Company on account of any violation or breach of the terms and conditions of the bond executed by the said Hartford Accident & Indemnity Company, as surety for the said Cullen W. Bailey in connection with the functions of said Cullen W. Bailey as receiver in said cause No. 89314."

Thereafter the intervener adopted, in its entirety, the petition of Farrell, with the exception of the prayer. Intervener prayed for judgment against appellant for $1,700 and for interest and costs and for general relief.

The appellant answered by general demurrer, several special exceptions, a general denial, and a plea of limitation. None of the special exceptions were presented and were therefore waived. The general demurrer was overruled and the case tried to the court without a jury.

Judgment was entered denying recovery to R. R. Farrell, but in favor of the intervener to the amount of $1,106.57 against appellant. Plaintiff Farrell is not complaining here of the adverse judgment, but Hartford Accident & Indemnity Company, the surety on Cullen W. Bailey's bond as receiver, has perfected this appeal, seeking a review of the judgment rendered against it in favor of the intervener Dean, present receiver for the Ertel Oil Properties, Inc.

The assignments of error relied upon by appellant are, in substance:

1. The court erred in overruling appellant's general demurrer.

2. The court erred in not sustaining its plea of limitation.

3. The court erred in rendering judgment for intervener against appellant as surety on the former receiver's bond.

4. The court erred in the admission in evidence of certain testimony of the witness Geo. S. Adams.

The foregoing assignments are each followed by full and complete propositions applicable thereto. We commend counsel for thus aiding the court in arriving at the specific matters complained of, even though amended article 1757, R.C.S. (Vernon's Ann. Civ.St. art. 1757), does not require such.

In view of the conclusions reached as to a proper disposition of this case, we find it unnecessary to discuss or decide the points raised, wherein appellant complains of the court's failure to sustain its general demurrer, its plea of limitation, or objections to the admission of testimony.

The third assignment, complaining of the judgment rendered against appellant as surety on the bond of Bailey, should be sustained under the facts developed upon the

trial, and this will render it unnecessary, as before stated, for us to discuss other assignments of error presented.

There is no controversy between the parties as to the real facts in this case. They are fully stated in the record before us. They support the fact allegations of plaintiff Farrell's petition, which allegations were relied upon by appellee. It is undisputed that Bailey was the duly appointed, qualified, and acting receiver of the Ertel Oil Properties, Inc., and that appellant was the surety on his bond; that Bailey told Farrell certain large creditors of the estate would sell their claims for a reduced sum; that these claims could be bought for $5,308.28; that if Farrell would furnish that amount of money, he (Bailey) would purchase the claims for Farrell and procure assignments to him from creditors of the estate; that Bailey assured Farrell that if he would do this, he (Farrell) would get his investment back with a profit within a short time; that upon these representations Farrell did furnish to Bailey the sum of money above indicated, and the latter purchased the claims and procured the assignments to Farrell as agreed upon, and early in 1933 (the exact date not shown), Farrell came into possession of the assignments, and upon investigation found the consideration recited in each, as to the amount paid out by Bailey, only aggregated $4,201.71, which was $1,406.57 less than Farrell had furnished to Bailey with which to make the purchase; that Bailey paid out of the last-mentioned amount $300 to an attorney for services rendered in connection with the transaction, leaving in Bailey's hands $1,106.57 of the original amount delivered to him by Farrell and not used by the former in the purchase of the claims for the latter.

As stated above, Farrell and appellee alleged that this money was obtained by Bailey by fraudulent representations, and later converted to his own use without authority, justification, or consideration. They sued the appellant as surety on Bailey's bond, alleging that Bailey's conduct constituted a failure on his part to faithfully perform the duties of a receiver.

Article 2297, Rev.Civ.Statutes, relating to the powers and duties of a receiver, provides: "The receiver shall have power, under the control of the court, to bring and defend actions in his own name as receiver, to take charge and keep possession of the property, to receive rents, collect, compound for, compromise demands, make transfers, and generally to do such acts respecting the property as the court may authorize."

Thus it will be seen that a receiver's acts with relation to the property intrusted to him by virtue of his appointment are at all times under the direct supervision and control of the court appointing him. Under the last clause of the above-quoted statute it is said in 36 Tex.Jur. p. 157, § 73: "Hence within lawful limits, a receiver may, and should be given such powers as are necessary or proper in the circumstances of the case."

Again, in the same volume, at page 159, § 74, the rule is further stated in this language: "Primarily a receiver derives his authority from the court which appointed him; and he has only such powers as the appointing court may confer upon him, 'under the general principles of law and due course of procedure' by the order of appointment or some subsequent order in the receivership proceeding."

Judged by the language of the order appointing Bailey as receiver, it is safe to say certain of the properties consisted of oil-producing lands, for the order provides that he shall take into his possession all of the assets, books of account, contracts, and documents of the Ertel Oil Properties, Inc., "with full authority to carry on and conduct the business of such company, and particularly to operate and develop the oil and gas lease described in plaintiff's bill of complaint," referring to the lease as being in Williamson county, Tex. Other parts of the order are substantially in the language of the statute above quoted.

The bond of Bailey as receiver, and upon which appellant is surety, provides, in the usual and customary language of such instruments, for an acknowledgment of liability in the sum specified, and concludes with this stipulation: "The condition of the above obligation is such, however, that if Cullen W. Bailey shall faithfully discharge his duty as receiver in such action and obey the orders of the court herein, then such obligation is to become null and void, but otherwise to remain in full force and effect."

There is nothing in the order of the court which could be construed to mean that the receiver should be empowered to go to Farrell or any other person and borrow money with which to purchase lia-

bilities of the estate represented by him, for the use and benefit of such stranger. Even if the receiver had believed it to the best interest of the estate to borrow money and purchase or compromise outstanding indebtedness of the estate, he could not do so without an order of court to that effect. It is said in 36 Tex.Jur. p. 169, § 79: "And the court may authorize its receiver to borrow money or incur indebtedness when necessary for the preservation and management of the property."

The charge in Farrell's petition against appellant is that its principal, Bailey, fraudulently induced plaintiff to deliver to him more money than was necessary to purchase certain debts against the estate and procure assignments therefor to Farrell, and that without leave or license Bailey wrongfully converted such excess fund to his own use and benefit. These allegations, by adoption of appellee, became his grounds of recovery also, and upon these facts judgment was rendered for appellee intervener against appellant.

We think the transaction between Farrell and Bailey was purely a personal one. It did not tend to affect the estate in any respect; it did not help or hurt those to whom the estate would revert when the receivership should end, nor in any way affect the rights of any creditor. The assignment of the debts to Farrell did not diminish or increase the liabilities of the estate one way or the other. Bailey did not dispose of or misappropriate any part of the property belonging to the estate represented by him (it belonged to Farrell); nor did he, in so far as this transaction is concerned, fail to faithfully discharge his duties as receiver, but complied with all of the orders of the court appointing him.

In accepting Farrell's money with which to procure the assignments of the claims, Bailey was not doing anything in connection with the care and management of the property in his possession as receiver, nor were said acts directly or indirectly incidental to the care and management thereof.

Preston v. Surety Company, 104 Md. 40, 64 A. 292, 295, was a case in which a receiver had been appointed under orders similar to those in the instant case, and the conditions of his bond were identical with those under consideration here. Money was paid to the receiver with instructions to purchase certain property for the account of the party who furnished the money. The purchase was not made by the receiver, but he thereafter converted the money to his own use. The party for whose benefit the purchase was to be made sued the receiver and his bondsmen for the advancement, and with respect to the liability of sureties the court said: "He [the receiver] was doing therefore what was not, and could not have been within the contemplation of the parties to the bond at the time of its execution, and not within the liability then assumed."

In many respects the liability of a surety on a guardian's or administrator's bond is like the case before us. In McMinn v. Cope et al. (Tex.Civ.App.) 112 S.W. 809, the court had under consideration the right of recovery against a surety on a guardian's bond, of money that had been paid to the guardian as a first installment under an agreement with the guardian to purchase. The sale was never confirmed by the probate court. Plaintiff recovered judgment against the surety. It was held since the advance payment to the guardian could not become a part of the ward's estate until the sale was confirmed, there was no liability on the guardian's bond for its payment. To the same effect is the holding in the cases of Webber v. Detroit Fidelity & Surety Co., 263 Mich. 144, 248 N.W. 576; In re Pfister's Estate, 216 Wis. 42, 255 N.W. 911, 256 N.W. 245; Bank of Newton County v. American Bonding Co., 141 Ga. 326, 80 S.E. 1003, 50 L.R.A.(N.S.) 1089.

Unless the excess fund in Bailey's hands could be said to be the property of the trust represented by him, his failure to account to the estate for it would not create a liability against his surety, the appellant here. We may assume that Bailey procured the money from Farrell by fraud and did not use it for the purposes agreed upon between the parties, but that Bailey wrongfully converted it to his own use. These facts were alleged and proven without contradiction. It cannot be said that all funds acquired by Bailey while receiver, whether by foul or fair means, belonged to the estate for which he was receiver. Under the facts clearly Bailey was personally liable to Farrell for a return of funds fraudulently acquired, but it does not follow that a surety on his bond as receiver would likewise be responsible to Farrell. This perhaps is the reason Farrell did not recover against appellant upon the trial.

The appellee, as present receiver for the estate, could not recover against appellant, a surety, unless the funds in Bailey's hands became the property of the estate. This proposition is recognized by appellee as a correct one; yet he seriously contends that because the fund was acquired by Bailey as a result of a proposed deal between him and Farrell to purchase for the latter certain outstanding claims against the estate, the money, though fraudulently acquired, became the property of the estate and should have been accounted for by Bailey to his successor, the appellee here. We do not agree with this contention. We recognize the well-settled rule of law that a trustee (and we think the rule will apply to a receiver) cannot profit by speculating on or with the trust estate property. Magruder v. Drury, 235 U.S. 106, 35 S.Ct. 77, 59 L.Ed. 151; Jackson v. Smith, 254 U.S. 586, 41 S.Ct. 200, 65 L.Ed. 418; Booth v. Greer Inv. Co. (D.C.) 52 F.(2d) 857.

Appellee concedes that the principal involved here is not unlike the fiduciary relation of an administrator to the estate represented by him, and seeks to show the case of Greenwall v. Ligon (Tex.Com.App.) 14 S.W.(2d) 829, 833, cited and relied upon by appellant, is not in point. We think it decisive of appellant's liability in this case. There the administrator collected money which did not belong to the estate, although he believed it did at the time of its collection. The administrator did not account to the estate for the fund and his bondsmen were sued upon the theory that by failure to account for the money he had breached his bond. The court said: "Where an administrator or executor collects money, and it later develops that he is not the proper party to make such collection, he would be individually liable, but his bondsmen would not be liable therefor."

In Bank of Newton County v. American Bonding Co., 141 Ga. 326, 80 S.E. 1003, 50 L.R.A.(N.S.) 1089, it was held that a surety on an administrator's bond is not liable thereon for the administrator's obligation to pay money illegally borrowed after the death of the decedent, or for money tortiously obtained by the administrator, although the money procured by the administrator was used for the benefit of the estate; that money wrongfully obtained by an administrator after the death of his intestate is not an asset of the decedent.

In Northern Finance Corporation v. Byrnes (C.C.A.Mo.) 5 F.(2d) 11, 13, a receiver had been appointed and as such he took into his possession certain lands upon which there existed a deed of trust lien. Pending the receivership, taxes became delinquent and the receiver without authority from court borrowed money from the mortgagee with which to pay the taxes. The receiver sold out the property under the deed of trust lien and the mortgagee brought it in. Later the mortgagee applied to the court for an order requiring the receiver to repay the money borrowed to pay taxes. The request was denied and the court said: "Appellant was bound at his peril to take notice of the powers of the receiver. When he advanced this money, he acted as a volunteer, and it cannot be stated too strongly that unauthorized agreements of receivers are their individual acts, and do not bind the court in any way."

Appellee relies largely upon what was said by the Supreme Court in the early case of Weems v. Lathrop, 42 Tex. 207. There is an expression in the opinion by the court in that case which is in line with appellee's contention here, but the facts of that case clearly distinguish it from the issue before us. There can be no question but that the fund sued for in that case belonged to the estate, and that fact fully warranted the court in holding the receiver should account for it, and upon his failure to do so, the sureties on his bond were liable. The receiver had in his possession certain slaves, and the court appointing him, by proper order, had instructed him to hire them out from year to year and to accept notes for their hire. He had complied with this order and reported his acts, showing he possessed the notes. The receiver died and a successor was appointed, and the latter sued the sureties on the bond of the first receiver for the amount of the notes shown to have been in the possession of the former receiver and not accounted for, and upon this state of facts the last receiver was permitted to recover against the surety on the bond of the first receiver.

Under the facts in this case, there is no question in our minds but that in a proper suit Farrell could have recovered against Bailey, or against his estate after his death, for the moneys advanced for a specific purpose and not so used. This is because the money did not become the

property of the estate represented by Bailey. The appellant did not undertake to guarantee the faithful performance of any other acts by Bailey than those pertaining to the receivership, and for that reason was not responsible to Farrell for moneys advanced to Bailey. The trial court, in effect, held this when he denied Farrell a recovery against appellant as Bailey's surety.

If there was any theory upon which appellee could recover in this case, under his pleadings and the facts which appear to have been fully developed, it would be our duty to reverse and remand the cause for another trial. Article 1856, Rev.Civ.Statutes; Williams v. Safety Casualty Co. (Tex.Sup.) 102 S.W.(2d) 178, 180; Colbert v. Dallas Joint Stock Land Bank (Tex.Sup.) 102 S.W.(2d) 1031. It was said by the court in the Williams-Casualty Company Case, supra: "It may sometimes happen, however, that, although a case has been tried upon the wrong theory, the record discloses an insuperable barrier to plaintiff's right to recover on any theory. In that event, the appellate court should render judgment."

From the conclusions reached by us and herein expressed, we can see no theory, under the law, by which appellee could recover against appellant as surety on Bailey's bond, and it therefore becomes our duty to reverse the judgment of the trial court and render judgment in favor of appellant.

Accordingly, the judgment of the trial court is reversed, and judgment is here rendered for appellant.