**Edward A. ENGEL and Helen Engel, Appellants,**

v.

**UNITED STATES of America and the People of the State of Michigan, Appellees.**

**No. 13376.**

United States Court of Appeals Sixth Circuit.

Aug. 14, 1958.

John Feikens, Detroit, Mich., and Robert B. Linsey, Grand Rapids, Mich., Linsey, Shivel, Phelps & Vander Wal, Grand Rapids, Mich., Snider, Feikens, Dice & Thompson, Detroit, Mich., on brief, for appellants.

Elizabeth Dudley, Dept. of Justice, Washington, D. C., Perry W. Morton, Roger P. Marquis, Washington, D. C., Wendell A. Miles, U. S. Atty., Grand Rapids, Mich., on brief, for appellee, United States.

Paul L. Adams, Atty. Gen., Samuel J. Torina, Sol. Gen., Lansing, Mich., Nicholas V. Olds, Asst. Atty. Gen., for appellee, State of Michigan.

Before SIMONS, Chief Judge, and MILLER and STEWART, Circuit Judges.

SIMONS, Chief Judge.

The appeal is from a judgment for the United States in a proceeding to recover possession of a strip of land of approximately 3.5 acres claimed by appellants to lie on the west side of the NE¼ of the SW¼, of Section 14, Town. 20 North. Range 14 West in Lake County, Michigan. The strip in controversy lies between property concededly belonging to the appellants on the east and contiguous area on the west, formerly owned by one Ruggles. The specific problem relates to the boundary between the NE ¼ of the SW ¼ of the section and the NW ¼ of the SW ¼. The case was tried to a jury and its determination of the boundary resulted in awarding possession of the disputed strip to the United States. Undisputed facts follow.

On August 31, 1932, Engel purchased the NE ¼ of the SW ¼ of Section 14 from the state of Michigan which had bid it in for delinquent taxes and on June 9, 1933 received deeds therefor from the Auditor General of the State. On November 29, 1939, the State obtained title to the NW ¼ of the SW ¼ of the section, which it had bid in at a tax sale in 1938. This was the Ruggles tract. On September 9, 1949, the Department of Conservation of the State of Michigan deeded the Ruggles tract to the United States, reserving, however, minerals, relics and rights of ingress and egress to a small lake called Perch Lake, claimed by Engel to lie wholly upon his property. The purpose of the government in acquiring the land was in furtherance of a general plan to purchase forest lands for recreation use by the general public.

At the trial of the cause, Engel claimed that he purchased his property from the State because an employee of the Michigan Conservation Department had examined aerial maps of the area and told him that the NE quarter entirely surrounded the lake and, being thus assured, bought it. Following receipt of the deed, he discovered that the Ruggles tract to the west was being administered by a lawyer named McPherson for the estate of Ruggles. He had been advised that Ruggles had had some surveying done by a surveyor named Johnson. He told McPherson that he wanted the property surveyed for the purpose of establishing a line dividing his land from that being administered by McPherson. Several weeks after his conversation with McPherson, Engel returned to Lake County and with Johnson and a surveyor friend of Engel, by the name of Cline, and went to Section 14. They discovered what they believed to be a post marking the NW corner of the SW quarter of the Section. They then measured with a surveyor's chain 1320′ East and set a stake. From this stake they measured 1320′ South, set stakes along the way and a post at the end of the measurement. Engel built a fence along the line thus marked, completed in 1934. Subsequent-

ly, Engel built a cottage on the west bank of Perch Lake which he completed in 1937. He also built a home on the east bank of the lake (not on the disputed strip) completed in 1945, in which he and his wife presently reside.

In August of 1949, a surveyor for the Michigan Conservation Department, by the name of Shadko, made a survey of Section 14. At the trial, Shadko testified that he located the section corners and quarter corners from the notes of old recorded surveys of Section 14 and contiguous sections and found a true line separating the Ruggles property from that of Engel. This line varied by approximately 90′ to 120′ east of the fence built by Engel. If the line thus established is the proper boundary, the United States would have frontage on Perch Lake and a portion of the cottage on its east bank would be on property owned by it.

The government filed its action on November 26, 1954. Engel denied all material allegations of the complaint and in addition pleaded four special defenses. These were: 1) That the government's action was barred by the statutes of limitation; 2) that title to the disputed strip had been perfected by adverse possession; 3) that by the conduct of an employee of the Conservation Department, the government was estopped from claiming title by the doctrine of equitable estoppel; 4) acquiescence in the boundary line between the Engel and Ruggles tracts which had been established by the fence which Engel built in 1934.

In addition Engel pleaded that the 1949 survey and the government's suit were the result of ill will engendered between Engel and parties connected with the Conservation Department during Engel's term as Sheriff of Lake County and that this ill will caused proceedings to be had against Engel which resulted in his removal by the Governor of Michigan as Sheriff of the county (and now charges that the Court erred in limiting his evidence in explanation of the removal proceedings.) The State of Michigan, because of its reservations in the deed to

the United States, intervened and was made a party plaintiff in the cause by stipulation of the parties therein. The trial judge refused to submit to the jury issues with regard to the statutes of limitation, adverse possession, equitable estoppel, or acquiescence.

Mr. Shadko testified extensively as to the method of his survey in August of 1949. He proceeded to relocate the East quarter corner Section 14 by the procedure set out by the General Land Office in Washington, so as to establish that corner at mid-point in a line between the two adjacent corners of the Section, as it was originally established. He consulted with Mr. George Blass, a practicing surveyor in Lake County with 25 years experience, a registered surveyor for approximately 12 years, and at the time of the trial the duly elected County Surveyor for Lake County. Shadko had used a stream as a central point for establishing the South quarter corner because he concluded that the stream had never changed its course by reason of the configuration of its banks, and in this Blass approved. Shadko undertook by letter to secure the notes of Johnson, the surveyor who had aided Engel in establishing the fence line, but the copy of Johnson's notes sent to Shadko were not of any material help to him. No notes, records, or evidence of surveys of Section 14 by Johnson were on record. Shadko testified that in looking for the correct boundary it is not a proper surveying practice to start from a quarter section corner and measure out a number of feet corresponding to a quarter mile and place a stake. "It is improper and illegal * * *. It is prohibited to establish the corner of a forty that way because sections are never perfect squares. That is not proper. That is not even surveying." The court carefully and specifically submitted the basic issue to the jury, instructing it that if the Shadko survey established the correct and proper boundary line between the Engel property and the Ruggles tract, it should find for the United States. On the other hand, if the jury determined that the

Shadko survey did not establish the correct and proper boundary but that the boundary line as established in 1932 or 1933 by the alleged survey and arrangement with the Ruggles estate was and is the correct boundary, the jury must find for the defendants "no cause of action".

It is, therefore, clear that the verdict of the jury determined the boundary between the two areas as surveyed by Shadko and that the judgment below must be affirmed unless there is merit in one or more of the special defenses submitted by Engel or prejudicial procedural error requires a new trial.

The special defenses based upon the Michigan statute of limitations and that based upon adverse possession are interdependent and have been so treated in some of the Michigan cases. The Michigan statute of limitations, Comp.Laws 1948, § 609.1, section 27.593, Michigan Statutes Annotated, provides that no person may maintain an action for the recovery of lands or the possession thereof unless such action is commenced within ten years where the defendant claims title under a deed made by some officer of the State or of the United States authorized to make deeds upon the sale of lands for taxes assessed and levied within the State. In Chamberlain v. Ahrens, 55 Mich. 111, 20 N.W. 814, 815, it was said: "The state is bound by the statutes of limitation and the defendant's rights are as complete against this title as against * * *". However, in Grand Rapids Trust Co. v. Doctor, 222 Mich. 248, 192 N.W. 641, there is a direct holding that statutes of limitation do not operate to bar the State. That case, on the point here involved, has been cited as controlling authority as recently as 1950, in Young v. Thendara, Inc., 328 Mich. 42, 43 N.W. 2d 58. United States v. Thompson, 98 U.S. 486, 25 L.Ed. 194, fully explores the principle that it is beyond the power of the State to make the United States subject to statutes of limitation. So, we conclude that State statutes of limitation do not operate to bar the United States, unless Congress has indicated otherwise,

and that statutes of limitation do not bar the State, unless the State statute requires that they should do so. The Chamberlain case, supra, is no longer the law of Michigan, in the light of the Doctor and Young cases, and we perceive no error in the holding of the court that the claim of adverse possession and the statute of limitation are not available to the appellant under Michigan law.

The trial court declined to charge the jury on the law of equitable estoppel, on the ground that the doctrine was applicable to the State only when the State acts in a proprietary and not in its governmental capacity. Collection of its taxes is, of course, one of the most vital needs of government. Michigan Case Law has not made a distinction between proprietary and governmental functions in applying the doctrine of equitable estoppel to the State. While it has been applied against the State in State v. Flint & P. M. R. Co., 89 Mich. 481, 51 N.W. 103, and State of Michigan v. Jackson L. & S. R. Co., 6 Cir., 69 F. 116, in neither case was classification of function discussed and in each action was taken by the duly qualified authorities of the State in misrepresenting the nature of public lands sold by the State to the plaintiffs. For reasons presently to appear, we find it unnecessary to thoroughly explore general law dealing with the doctrine of equitable estoppel against the State. It is enough to note that there are holdings that a sovereign State is not subject to an estoppel to the same extent as private parties and that a State can not be estopped by the unauthorized acts or representations of its officers. See 19 American Jurisprudence, 818, Sec. 166, and cases there noted.

■ Here, there is no evidence of fraud or misrepresentation as to the boundary by qualified authorities of the State. Engel testified that he was directed to the Michigan Conservation Department where he asked to look at aerial maps of Lake County and an unnamed employee there obliged him. He advised this employee he was interested in purchasing land and described the land.

Asked if the land entirely surrounded the lake, the employee took a grid scaled to a map of the quarter section, placed it thereon, and told Engel that the land did surround the lake. The employee then asked Engel to look for himself, which he did, and became satisfied that the appropriate quarter entirely surrounded Perch Lake. His knowledge was equal to that of the employee, and there is no evidence that the information given Engel was calculated to mislead. In Cudahy Brothers Co. v. West Michigan Dock & Market Corporation, 285 Mich. 18, 280 N.W. 93, it was held that there can be no estoppel when one claiming it is cognizant of all of the material facts and there is no evidence showing, even by remote inference, that the employee had authority to make any representation whatsoever. The Court was not in error in declining to submit to the jury an issue with regard to estoppel by the State.

The action of the court in failing to submit to the jury the defense of acquiescence was, likewise, not error. There are cases which hold that a boundary line can be established by acquiescence for less than the statutory period, if the line was established as the result of a settlement of a dispute or the resolution of a doubt. Hanlon v. Ten Hove, 235 Mich. 227, 209 N.W. 169, 46 A.L.R. 788, Johnson v. Squires, 344 Mich. 687, 75 N.W.2d 45. Except for reasons later to be developed, Engel's testimony would present an issue of fact as to whether or not the fence line was established as the result of resolving a doubt. Engel testified that he discovered that the adjoining property was owned by the Ruggles estate and was being administered by a lawyer named McPherson. He went to McPherson to see if a boundary had been established and reasonable inferences may be drawn from his testimony that Engel and McPherson agreed to resolve the doubt with the help of a surveyor named Johnson. The fence was built in 1934 on a line marked by Engel, Johnson and a surveyor friend of Engel named Cline in 1933. The State received its deed to the Ruggles property on Novem-

ber 29, 1939, so, there was more than six years acceptance by the Ruggles estate prior to the vesting of title in the State of the Ruggles tract.

The doctrine of acquiescence has frequently been assimilated to that of oral agreement, to laches in asserting rights and to estoppel. The parties to the agreement in the present care are Engel and McPherson, no others having any interest, and the public is not involved. It becomes necessary, therefore, to consider the power of the parties to enter into the agreement here relied upon. The interest of Engel is, of course, clear. The authority of McPherson is based solely upon information that he was administering the estate of Ruggles and the question presents itself as to the scope of his authority. Michigan law is clear, and established by many cases, that on the death of an intestate real property passes immediately to the heirs. Kinne v. Farmers Mutual Fire Ins. Co., 241 Mich. 637, 217 N.W. 755. In Auditor General v. Fisher, 84 Mich. 128, 47 N.W. 574, 575, it was unequivocally declared of an administrator: "He also had no power or authority to bind the estate of which he was administrator". Webber v. Detroit Fidelity & Guaranty Co., 263 Mich. 144, 248 N.W. 576, held that when an administrator, without license, attempted to sell land belonging to an estate the sale was void, citing Michigan cases and many cases from other states. In asserting the doctrine of acquiescence as a special defense, advanced by Engel, the burden was upon him to establish an agreement with the heirs of Ruggles that the Engel fence was the boundary between his property and the Ruggles tract. McPherson was not empowered to enter such an agreement, either expressly or by reasonable inference. McPherson was without authority from the Ruggles heirs to agree to the Engel line, either expressly or by necessary inference. There was no proof of authority given by the heirs of Ruggles to McPherson to act for them and, so, there was no acquiescence by them in the Engel line as a matter of law. The Court was not in error in failing to submit an issue of fact to the jury as to the applicability of the doctrine.

It remains only to consider a procedural error urged by Engel to justify reversal and a new trial. Engel had asserted in his answer that the action of the Department of Conservation in having the property surveyed was activated by malice and ill will toward him and for the purpose of destroying his property. Upon cross examination, he specifically asserted that he made such claim and that it was in connection with it that his removal from the office of sheriff by the Governor of Michigan was injected into the case. The cross examination brought to light that twenty-three charges of misconduct in office by Engel had been sustained, only two of which were remotely connected with conservation matters. The Court permitted redirect examination as to the two charges but declined to receive evidence into twenty-one of the Governor's charges, which had no relevance to the boundary issue, although Engel was permitted to enter a specific denial as to all the charges relied upon by the Governor. It was clearly within the discretion of the trial judge to limit the evidence to material issues and to refrain from retrying the removal proceeding. In its instructions, the district judge limited consideration of this evidence only as it bore upon the credibility of the defendant, as a witness, and the weight that should be accorded to his testimony. We find no error either in the rejecting of Engel's evidence in this respect or the limitation put upon it in its instructions to the jury.

We find no prejudicial error in the record and the judgment must be, and it is, hereby

Affirmed.