The ATLANTIC REFINING COMPANY, Appellant,

v.

Maxine TIDWELL, Individually and as Guardian of the Estate of Harry Max Spinks et al., Appellees.

No. 13288.

Court of Civil Appeals of Texas.

Houston.

Nov. 20, 1958.

On Motion for Rehearing Dec. 18, 1958.

———◆———

A. C. Grosse, Dallas, for appellant.

J. B. Sallas, Crockett, for appellees Maxine Tidwell, Individually and as Guardian of Estate of Harry Max Spinks, a Minor, et vir. Lawrence W. Vance, Dallas, for appellee Lawyers Surety Corp.

Kennedy & Granberry, Crockett, and F. P. Granberry, Crockett, in his capacity as Guardian Ad Litem for minor, Harry Max Spinks.

WERLEIN, Justice.

This suit was brought by appellant, Atlantic Refining Company, against Maxine Tidwell, Individually and as Guardian of the Estate of Harry Max Spinks, a Minor, James B. Tidwell, and Lawyers Surety Corporation, to recover from appellee, Mrs. Maxine Tidwell, individually and as guardian, money allegedly paid by appellant to her as guardian of said estate, and from the Lawyers Surety Corporation as surety on her bond.

After appellant acquired the producing properties of the Houston Oil Company, including two producing leases under which Harry Max Spinks, a minor, owned and was entitled to receive a .000290 royalty interest, appellant's accounting department undertook to punch I B M cards from which monthly royalty checks owing said minor and other persons formerly receiving checks from the Houston Oil Company could be printed. Appellant alleged that through error it paid Maxine Tidwell, Guardian of the Estate of Harry Max Spinks, in July, August, September and October of 1956 overpayments aggregating $3,036.21. Appellant further alleged that it presented its claim to said guardian and that she had not allowed or rejected the same within thirty days so that it was rejected by operation of law; and that this suit was filed before ninety days had elapsed since such rejection.

The trial court on its own motion appointed F. P. Granberry Guardian Ad Litem to represent the ward, evidently believing that there was a conflict of interest between said minor and his guardian. Motions for summary judgment were filed by appellant, Lawyers Surety Corporation and said guardian ad litem. All such motions were overruled. Thereafter, the case proceeded to trial before the court without a jury, and judgment was rendered on February 8, 1958, in favor of the appellees, from which judgment appellant has appealed.

Appellant's First Point of Error, complaining of the court's judgment denying its motion for summary judgment (from which alone an appeal would not lie), need not be presently discussed since the entire case is before us and all questions presented will be determined in connection with appellant's other points. Rule 166–A, Texas Rules of Civil Procedure; Mellett v. Hudstan Oil Corp., Tex.Civ.App., 243 S.W.2d 438, ref., n. r. e.; Tobin v. Garcia, Tex., 316 S.W.2d 396.

Appellant's Second and Third Points of Error assert that the undisputed evidence establishes that the overpayments made by appellant were caused by an accident or mistake and were not "voluntary"

in the sense that a voluntary payment is a defense to an action to recover money.

The record shows that the mistake was made by an individual assigned by the supervisor in charge of appellant's Oil Accounting Section to assign owner numbers to individual owners of oil interests in order that royalty payments might be made. Mrs. Tidwell as guardian was assigned No. 912020 which covered her interest as guardian under the two leases belonging to the minor. Another owner of an interest should have been assigned No. 921020. The employee assigning owner numbers inadvertently transposed certain digits in writing down the interest of such other owner and wrote 912020 instead of 921020, thereby allotting to said guardian the interest belonging to the other owner.

■ There is a presumption of regularity in the course of business or the conduct of affairs. This Court will presume, therefore, in the absence of evidence to the contrary, that said employee was undertaking to perform his duty honestly and regularly, and that he did not intentionally or consciously transpose said figures. As stated by McCormick and Ray, Texas Law of Evidence, Sec. 95, p. 123:

"This presumption of regularity in the performance of official duties has gradually been extended to acts of private persons and corporations in the transaction of business affairs. The courts feel that it is a reasonable assumption that men have acted lawfully and properly, and in accordance with the usual and customary mode of business, until some departure is shown."

Said employee was ignorant and unconscious of the mistake or error consisting of the transposition of said figures, which in the normal routine and sequence of the business resulted in the overpayments in question. Hence such payments were made not in conscious ignorance but in unconscious ignorance of the facts. The punching of the I B M cards and the feeding of the same into the I B M machine, and the mailing of the checks did not constitute the mistake. The mistake was the unconscious transposition of digits which proximately resulted in the overpayments. Manifestly, in a large corporation such as appellant it would be impossible for anyone or any group of employees to know all of the facts pertaining to production, the interests of owners, the accounting, the payments of royalties and the other numerous details in connection with the operation of such a business. In one sense, therefore, every employee would be conscious of his ignorance concerning such details of the operation of the company. But such conscious ignorance of the myriad details of the operation of a large company should not foreclose appellant's right to recover, where, as here, a mistake or accident consisting of the transposition of digits, made in unconscious ignorance thereof, resulted directly in the overpayments. We are of the opinion, therefore, that the overpayments were not voluntary in the sense that they cannot be recovered. The total amount paid during said four months was $3,057.20, whereas the aggregate amount due under the leases belonging to said minor for said period was only $20.99, making a net overpayment of $3,036.21, which appellant seeks to recover.

In Prigmore v. Hardware Mut. Ins. Co. of Minnesota, Tex.Civ.App., 225 S.W.2d 897, no writ history, the defendant's home office failed to discontinue Prigmore's salary checks after his discharge. Prigmore later executed a note covering such unearned salary checks. After making a few payments, he refused to pay the balance, contending that the overpayments were "voluntary" and were not consideration for his note. The court held that the evidence revealed conclusively that such checks were sent to Prigmore as the result of accident, mistake, lack of proper information or through the negligence of the company. The court further held that the note was executed for a valuable consideration in that it was given by appellant for money

wrongfully obtained. See also Merryfield, v. Willson, 14 Tex. 224.

In Ingram v. Posey, Tex.Civ.App., 138 S.W. 421, the plaintiff (Posey), a bank cashier, purchased a note payable to Ingram for the account of Bird, a customer of the bank. The maker of the note paid the same through the bank, where the plaintiff was cashier, and the cashier through negligence and oversight credited the account of Ingram instead of the account of Bird with such payment. Ingram checked the money out of the bank and used it for his own benefit, and the plaintiff was required to and did pay the amount to Bird. The court held that the plaintiff could recover from Ingram, stating:

"It is a well-established doctrine, both by courts of law and of equity, that, where one person has received money of another which in honesty and good conscience he cannot retain, an action will lie by the party entitled to recover it back, and whether the action be in assumpsit or for money had and received under our Code is immaterial. Merryfield v. Willson, 14 Tex. 224, 65 Am.Dec. 117; Ph. Zang Brewing Co. v. Bernheim, 7 Colo.App. 528, 44 P. 380; 4 Pomeroy's Equity (3d Ed.) § 1419."

See Stanolind Oil & Gas Co. v. Allison, Tex.Civ.App., 121 S.W.2d 480, 482, affirmed and opinion adopted by the Supreme Court, Allison v. Stanolind Oil & Gas Co., 133 Tex. 540, 129 S.W.2d 267. In that case the lessee paid to lessors the entire bonus on an oil lease on Relinquishment Act lands whereas one-half thereof should have been paid to the State of Texas. Justice Baugh, speaking for the Court of Civil Appeals, stated:

"It clearly appears that at the time payment was made to the lessors both parties believed that the surface owner was entitled to retain the entire bonus. * * * While the general rule is, but not without exception, that moneys voluntarily paid under a mistake of law

where all facts are known to the payer, can not be recovered; the rule is otherwise where same is paid under a mistake of fact. 32 Tex.Jur. § 48, p. 727, and § 52, p. 735."

We think the case of Crandall v. Moss, Tex.Civ.App., 252 S.W.2d 491, 495, writ ref., n. r. e., is distinguishable from the instant case. In that case there was lacking entirely from the plaintiff's pleading and proof a constituting element of mistake. The court stated:

"The element wanting is an unconscious ignorance that the $60,000 in question had been paid to appellants at the time the overpayments were made. * * * In our opinion there is a total lack of evidence to support a finding of mistake on the part of appellee. Appellee knew the appellants were receiving one-eighth of seven-eighths. He was receiving a portion of the seven-eighths. He knew what his interest was, he knew how much he was receiving. He knew the location and extent of production."

In the present case the employee who made the mistake did so without consciously knowing it and in ignorance thereof. We hold, therefore, that Mrs. Tidwell cannot in honesty and good conscience retain the overpayments and that appellant is entitled to recover the same from her in her individual capacity.

Appellant's Fourth Point of Error is to the effect that the guardian, having received the overpayments in her representative capacity and having failed to approve or to reject appellant's claim or to account for such funds in her annual report, the surety on her official bond is liable to appellant for the loss it sustained.

The bond in question was made under Article 4141 of the Revised Civil Statutes of Texas, now covered by Sections 36 and 194 of the Probate Code, V.A.T.S., for the protection of the estate of the minor. If the obligation of a bond can be extended

to cover money paid to the guardian under a mistake of fact and not deposited in the guardian's account, as in the instant case, it would be impossible for a court to determine the size of the bond that should be required. In fixing the bond at $5,000, the court took into account the personal property of the ward and the income of the estate. Appellant claims a little over $3,000. If we assume that the overpayments had reached $5,000 and if judgment was recovered against the bonding company in that amount, the bond that was given for the protection of the ward would be completely depleted, and the ward could not recover on such bond for any misuse of his estate by the guardian theretofore made. Thus, the very purpose of the bond, which is to protect the minor, giving him a right to look to the guardian or her bond for any misapplication of funds, would be vitiated.

In American Indemnity Co. v. Noble, Tex.Com.App., 235 S.W. 867, the ward, Noble, sued the surety on his guardian's bond for an accounting of money received as the result of the sale of real estate. The bond in question was made at a time when the statute required a special bond for the sale of real estate. The guardian sold the real estate without such special bond and failed to account for the money. The court held that the general bond was meant to cover the personal property on hand and the income for one year, as provided by statute, and was not to cover some other item, and that the surety on the general bond was not liable.

See Greenwall v. Ligon, Tex.Com.App., 14 S.W.2d 829, 833. In that case it was contended by the adverse party that Greenwall, who owed money but was not sure he would be safe in paying same to the administrator, could have paid the money and received the protection of the administrator's bond in case it was decided it did not belong to him. The court said:

"It is also insisted that Greenwall should have made payment of notes to the administrator, as he would have

been protected by the administrator's bond, if it was subsequently determined he was not the proper person to receive payment. It is the settled law of this state that, where an administrator or executor collects money, and it later develops that he is not the proper party to make such collection, he would be individually liable, but his bondsmen would not be liable therefor."

See also Hartford Accident & Indemnity Co. v. Farrell, Tex.Civ.App., 107 S.W.2d 442, writ dism.

Appellant contends that the Lawyers Surety Corporation is liable on the surety bond because of the failure of the guardian to approve or reject appellant's claim or to account for the money. Appellant's claim was not verified or properly authenticated, under Sec. 301, Probate Code, V.A. T.S. Moreover, the record shows that appellant introduced in evidence the sworn inventory of the guardian for 1957, in which she stated: "The guardian received M T ~~in overpayment~~ from Atlantic Refining Company the sum of $3,036.21. This amount of money was not deposited in the guardianship account." In the absence of evidence to the contrary, appellant is bound by such statement. Had the money belonged to the minor, it would have been the duty of the guardian to deposit it in the guardianship account and to inventory it as belonging to the ward's estate and to have approved or rejected appellant's claim had it been in compliance with legal requirements. The fact that the guardian has not done so and has not treated the money as belonging to the ward, even endorsing one of the checks in her individual name, indicates that she has been acting for her individual benefit. The minor cannot recover the overpayments from his guardian because he is no more entitled thereto than she. The bare fact that the checks were made payable to Mrs. Tidwell as guardian and that three of them were endorsed by her as guardian does not

establish that she was in fact acting as such guardian in cashing the checks.

Appellant further contends that Mrs. Tidwell breached the condition of her bond (faithfully to discharge her duties according to law) by violating Art. 1429 or Art. 1538 of the Penal Code. It will be noted that the guardian could not be guilty of conversion or theft of the minor's property since the overpayments never became the property of the ward. We do not think that the appellant is entitled to recover against the bonding company for an alleged dereliction on the part of the guardian which does not concern the estate of the ward.

Appellant relies upon the case of Fidelity & Deposit Co. of Maryland v. Wiseman, 103 Tex. 286, 124 S.W. 621, 126 S.W. 1109, and its companion case, Houston Fire & Marine Ins. Co. v. Swain, Tex.Civ.App., 114 S.W. 149. Those cases are distinguishable from the instant case. One Swain, during his lifetime, procured 1,080 shares of Houston Fire & Marine Ins. Co. stock, for which the company was given forged bonds of the City of Austin. The forgery was not discovered until after his death. Swain's widow qualified as community survivor, had a new certificate for such stock issued in her name as survivor, and then sold the stock. As such survivor she lawfully received in her official capacity the stock in question and inventoried it as belonging to her husband's estate. She distributed the proceeds from the sale to the heirs prior to the expiration of the time during which creditors might present claims. The court stated that the obligation of the surety was to protect the fund or property of the estate in favor of creditors generally and heirs. See 14-B Tex. Jur., Sec. 1101, p. 164.

The cases of Hill v. Escort, 1905, 38 Tex. Civ.App. 487, 86 S.W. 367, and Fidelity & Deposit Co. of Maryland v. Texas Land & Mortgage Co., Limited, 40 Tex.Civ.App. 489, 90 S.W. 197, writ denied, cited by appellant, are also distinguishable from the present case, in that the property involved in such cases was actually treated in the administration of the estates as belonging thereto.

It is our conclusion that Mrs. Tidwell received and holds the overpayments in her individual capacity outside the scope of the guardianship and the provisions of the bond, and that the bonding company is not liable.

■ Appellant's Fifth and Sixth Points, briefed together, assert that the trial court's Conclusion of Law No. 4 striking the photostatic copy of the ledger sheet on the ground that the same was not proved is contrary to the evidence and also that under the undisputed evidence the receipt of the overpayments by the guardian in her representative capacity inured to the benefit of the ward both in law and in fact, notwithstanding the trial court's Findings of Fact Nos. 10 and 11 and Conclusions of Law Nos. 2, 3 and 4.

Appellant's contention is that since the checks were made payable to Mrs. Tidwell as duly qualified guardian, the minor's estate is liable regardless of what she subsequently did with the overpayments. The evidence indicates that Mrs. Tidwell knew all the time that the minor was not entitled to the overpayments and the evidence is undisputed that she did not deposit the overpayments to her account as guardian of the ward. The ward's estate received no benefit from such overpayments. Since they were not deposited to the ward's account, a judgment against the guardian would mean that appellant could proceed against the assets belonging to the ward other than the overpayments, and thus deplete or consume the ward's estate.

Appellant undertook to introduce a copy of an alleged ledger sheet showing debits and credits to the guardian's account in the State National Bank of El Paso since her 1956 report, claiming that such statement had been furnished appellant's counsel at his request by Mr. Sallas who was

then the attorney for Mrs. Tidwell both individually and as guardian. The court admitted the copy but later struck the same on the ground it had not been proven. The letter of Mr. Sallas to appellant's counsel merely stated: "I enclose a ledger sheet reflecting the condition of account 108080 which Mrs. Tidwell mailed me this week." The copy is apparently a photostatic copy of ledger sheet No. 108080. At the top thereof appear the words, "Mrs. Maxine Tidwell, Guardian of Harry Max Spinks, a Minor." The name of the bank is not shown. A careful examination of the ledger sheet fails to disclose that any deposits in the amounts of the checks sent by appellant to Mrs. Tidwell as guardian were deposited to the account. True, deposits were apparently made in the State National Bank on the dates on which certain deposits appear on the ledger sheet to have been made. There is nothing to show, however, that the checks of the appellant were deposited in the guardianship account, and the amounts of the checks are entirely different from the amounts shown on the ledger sheet.

We think the court did not err in striking said copy and that the court's Conclusion of Law No. 4 to the effect that appellant failed in its attempt to prove that the checks in question were deposited to the guardianship account is supported by the evidence. We are also of the opinion that the court's Findings of Fact Nos. 10 and 11 to the effect that Maxine Tidwell received the proceeds of such checks and placed same in her personal funds and did not place same in the funds of the estate of the minor, and so reported in her annual account which was introduced in evidence by appellant, and attached to appellant's motion for summary judgment, are amply supported by the evidence.

There is no merit in appellant's Seventh Point complaining that the court assessed the fee for the guardian ad litem against appellant.

The judgment of the trial court is affirmed as to Maxine Tidwell as Guardian of the Estate of Harry Max Spinks, Lawyers Surety Corporation, James B. Tidwell, and F. P. Granberry in his capacity as Guardian Ad Litem for the minor, Harry Max Spinks, but is reversed and rendered in favor of appellant, Atlantic Refining Company, against Maxine Tidwell, individually, in the amount of $3,036.21, together within interest at the rate of 6%' per annum from and after February 8, 1958, the date of judgment of the trial court. All costs in this Court and the trial court, with the exception of the fee of the Guardian Ad Litem which is taxed against appellant, are taxed against the appellee, Maxine Tidwell, individually.

Affirmed in part and in part reversed and rendered.

WOODRUFF, J., not sitting.

On Appellant's Motion for Rehearing

■ Appellant has pointed out that we stated in our opinion that the name of the bank did not appear on the ledger sheet. At the request of appellant we have re-examined the exhibit. By a careful, almost microscopic inspection thereof, we find that we were mistaken, and that it is possible by close scrutiny to make out faintly the name of the bank. This does not, however, change the fact that the amounts shown on the ledger sheet are entirely different from the amounts of the checks issued by appellant, or our holding that the trial court's conclusion No. 4 to the effect that the appellant failed to prove the checks in question were deposited to the guardianship account, is supported by the evidence. The ledger sheet, had it not been stricken, would not have constituted in itself evidence of probative force, and hence the striking thereof, if error, was harmless. Rule 434, T.R.C.P. The burden was upon appellant to prove by more than mere surmise that the money deposited

in the account was a part of the proceeds of the checks in question.

The evidence shows that Mrs. Tidwell knew she was not entitled to the money. Since she failed to return it on demand, the judgment against her in the sum of $3,036.21 rendered in our original opinion is reformed to the extent that it will bear interest as prayed for by appellant from February 28, 1957, instead of February 8, 1958. Our opinion is modified accordingly; otherwise, motion for rehearing is overruled.

WOODRUFF, J., not sitting.